626 N.E.2d 518 (1993)
Gordon HEAD d/b/a H & H Enterprises and William S. Spangler d/b/a Cline Avenue Development Co., Appellants-Defendants below,
v.
COMMISSIONER, Indiana Department of Environmental Management, Appellee-Plaintiff below.
No. 45A03-9303-CV-101.
Court of Appeals of Indiana, Third District.
December 22, 1993.
Rehearing Denied March 7, 1994.
*520 William S. Spangler, Crown Point, for appellants-defendants.
*521 Pamela Carter, Atty. Gen., Anita W. Kimmell, Elizabeth A. Zlatos, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.
STATON, Judge.
Gordon Head d/b/a H & H Enterprises and William Spangler d/b/a Cline Avenue Development Co. (collectively "Head") appeal a December 4, 1992 judgment granting injunctive relief sought by the Commissioner of the Indiana Department of Environmental Management ("IDEM"). Head articulates fifteen issues for appellate review but addresses only three issues in his appellant's brief. We therefore address the following (consolidated) issues:
I. Whether the judgment of the trial court is supported by the evidence.
II. Whether the trial court erroneously denied Head's motions for a continuance.
III. Whether witness Gregory Steele was erroneously permitted to testify over Head's objection.
Head also appeals an order of contempt issued by the Lake Circuit Court on March 9, 1993. A single (consolidated) issue is presented for our review: whether the trial court erred in finding Head in contempt of court.
We affirm.
Head was previously engaged in an operation consisting of receiving "automobile fluff" from vendors, separating the "fluff" materials and reselling reusable portions. "Automobile fluff" is the shredded automobile remains after the engine and block have been removed. The automobile fluff operation was conducted at a site at 9th and Cline Streets in Gary, Indiana.
On September 23 and 25, 1992, IDEM issued notices to Head to cease and desist the foregoing operation. On September 28, 1992, IDEM filed a complaint which alleged that Head allowed the deposit of solid waste without a permit, in violation of IND. CODE 13-7-4-1, conducted a facility contributing to pollution without prior approval of IDEM, in violation of IND. CODE 13-7-4-1(6) and disposed of polychlorinated biphenyls ("PCBs") in violation of IND. CODE 13-7-16.5-7. Hearing was held on October 19, 1992.
On December 4, 1992, the trial judge issued findings of fact and conclusions of law providing:
"1. Defendant, Gordon Head, is purchasing and currently manages a parcel of land located at the northeast corner of 9th Street and Cline Avenue, in Gary, Indiana (hereinafter `the site').
2. The site is being operated by Defendant Head doing business as H & H Enterprises.
3. Defendant, William Spangler, owns the western part of the site and is doing business as Cline Avenue Development Company.
4. Neither H & H Enterprises nor Cline Avenue Development Company are corporations registered with the Indiana Secretary of State.
5. The Indiana Department of Environmental Management (hereinafter "IDEM") conducted inspections on February 14, July 7, and December 13, 1991, which revealed that Defendants had caused or allowed the deposit of solid waste in the form of automobile fluff at the site.
6. A letter of warning was sent by Plaintiff to H & H Enterprises on June 19, 1991, which stated that Defendants' activity constituted the operation of an open dump and should cease immediately, and that all solid waste at the site was to be removed to a properly permitted disposal facility.
7. Defendants do not currently have and have never applied to IDEM for a solid waste facility permit.
8. Defendant Head responded to Plaintiff by letter dated June 22, 1991, that by processing the automobile fluff he is recycling and not dumping.
9. Defendants do not have approval by IDEM to install or operate the equipment at the site to process the automobile fluff at the site.

*522 10. The inspection conducted by IDEM on December 13, 1991, revealed that the pile of automobile fluff had grown significantly and was approximately 120 yards wide by 205 yards long by 4 yards high.
11. On December 17, 1991, Plaintiff issued to Defendants a Notice of Violation which detailed violations of the Indiana Solid Waste Management Act.
12. On February 12, 1992, Defendants met with representatives of Plaintiff to discuss the possibility of continuing the operation at the site until a permit could be issued.
13. On March 26, 1992, Plaintiff notified Defendants by mail that continued operation of the site without a permit was not possible.
14. On April 4, 1992, Defendant Spangler notified Plaintiff by letter that Defendants were doing nothing wrong and challenged Plaintiff to proceed with enforcement action.
15. On September 17, 1992, the Northwest Regional Office of IDEM received copies of test results of sampling done on the automobile fluff at the site done by Anthony Solvasi of the United States Environmental Protection Agency ("USEPA") which indicate that the automobile fluff contains polychlorinated biphenyls (PCBs) at levels which significantly exceed permissible limits.
16. Defendants were notified by Plaintiff on September 25, 1992, of USEPA test results and told by Plaintiff to cease and desist operations at the site, including the deposit of additional automobiles and any processing of the fluff, and to secure and contain the automobile fluff at the site.
17. Defendants' conduct indicates that they are unwilling to comply with proper disposal requirements.
18. Test results from samples taken by IDEM at the site on September 28, 1992, indicate that the automobile fluff at the site contains PCBs at levels which significantly exceed permissible limits and contains lead in such levels that the automobile fluff constitutes a hazardous waste.
19. The automobile fluff at the site poses a distinct and imminent threat of contamination to the groundwater at the site, the wetland which is on and near the site, and poses a distinct and imminent threat of harm to those who come in contact with the automobile fluff at the site or breathe in air-borne particles from the fluff onsite.
CONCLUSIONS OF LAW
1. Commissioner of IDEM is authorized to bring this action for injunctive relief pursuant to IC 13-7-5-7 and IC XX-X-XX-X.
2. The automobile fluff at the site constitutes a `solid waste' as defined by IC XX-X-X-XX.
3. Defendants own and operate a `solid waste facility' as is defined by 329 IAC 2-2-1(54).
4. Defendants own and operate a `solid waste processing facility' as is defined by 329 IAC 2-2-1(56).
5. Defendants failed to apply for or obtain a permit for their solid waste facility and, therefore, are in violation of IC 13-7-4-1(6) and 329 IAC 2-8-1.
6. Defendants failed to apply for or obtain approval from IDEM to process solid waste and are, therefore, in violation of IC 13-7-4-1(6) and 329 IAC 2-8-1.
7. Defendants have caused or allowed open dumping of solid waste at the site and are, therefore, in violation of 329 IAC 2-4-3.
8. Defendants have caused or allowed the storage and processing of solid waste at the site in a manner which creates a threat to human health and the environment and, are therefore, in violation of IC 13-7-4-1(3) and 329 IAC 2-4-2.

*523 9. The automobile fluff at the site is a hazardous waste pursuant to 329 IAC 3-1-7 and 329 IAC 3-3-3.
10. Defendants have stored solid waste which is also a hazardous waste at the site, improperly and without a permit and are in violation of IC 13-7-4-1(9) as well as 329 IAC 3 et seq.

11. The Court is authorized to assess cure penalties against Defendants pursuant to IC XX-X-XX-X for Defendants' violations of IC 13-7 et seq. and 329 IAC 3 et seq.

12. The violation of IC 13-7 et seq., 329 IAC 2 et seq. and 329 IAC 3 et seq. constitutes irreparable harm per se.

13. Plaintiff has no adequate remedy at law."
Record, pp. 188-191.
Head was enjoined from accepting or processing automobile fluff and was ordered to dispose of the existing automobile fluff at a site approved by the United States Environmental Protection Agency ("EPA") to accept hazardous waste. A civil penalty in the amount of $100.00 per day was imposed to ensure compliance.
On December 17, 1992, Head filed a Petition for Modification and Supplementation of Court's Order; IDEM filed written objections in response thereto.[1] On February 12, 1993, the Lake Superior Court issued a temporary restraining order enjoining Head from entering the subject property. On March 9, 1993, the court found Head to be in contempt for failure to comply with the order entered on December 4, 1992. Head appeals.

I.

Judgment Granting Injunctive Relief
In seeking injunctive relief, IDEM alleged that Head violated I.C. 13-7-16.5-7, I.C. 13-7-4-1(6), 329 IAC 2-4-2, 329 IAC 2-4-3 and 329 IAC 2-8-1.
I.C. 13-7-16.5-7 provides that: "a person shall not dispose of solid or liquid waste resulting from the use in his business of PCB or an item, product, or material containing or which has contained PCB except in conformity with rules promulgated by the board."
I.C. 13-7-4-1(6) provides that no person may: "construct, install, operate, conduct, or modify, without prior approval of the department, any equipment or facility of any type which may cause or contribute to pollution or which may be designed to prevent pollution."
329 IAC 2-4-2 provides: "No person shall cause or allow the storage, containment, processing, or disposal of solid waste in a manner which creates a threat to human health or the environment, including the creating of a fire hazard, vector attraction, air or water pollution, or contamination."[2]
329 IAC 2-4-3 provides: "Open dumping and open dumps, as those terms are defined in IC XX-X-X-XX, are prohibited."[3]
329 IAC 2-8-1 provides in pertinent part: "any person who disposes of solid waste or operates a solid waste processing facility must have a solid waste facility permit."
*524 In granting the requested injunctive relief, the trial court concluded that Head violated the foregoing statutes and administrative rules. Head contends that no evidence exists to support the trial court's findings and conclusions that he: disposed of solid waste without a solid waste permit, operated a facility contributing to pollution, disposed of PCB contaminated material, maintained an "open dump" or presented a threat to groundwater.
When a party has requested specific findings of fact and conclusions of law under Ind.Trial Rule 52(A), the reviewing court cannot affirm the judgment on any legal basis; rather, this Court must determine whether the trial court's findings are sufficient to support the judgment. Vanderburgh County Board of Commissioners v. Rittenhouse (1991), Ind. App., 575 N.E.2d 663, 665, trans. denied. In reviewing the judgment, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. Id. The judgment will be reversed only when clearly erroneous, i.e., when the judgment is unsupported by the findings of fact and conclusions of law entered on the findings. DeHaan v. DeHaan (1991), Ind. App., 572 N.E.2d 1315, 1320, reh. denied, trans. denied. Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. Id. To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. Id.
Head first argues that no evidence shows he disposed of material which was "solid waste"; he alleges that automobile fluff is neither "waste" nor "discarded" because it is recycled into the steel industry.[4] He points to the testimony of Steven Schafer of IDEM concerning the metal materials remaining after a hand-separation process: "I assume they were going to be reintroduced back into the steel industry." Record, p. 287.
However, the evidence in the record only establishes that a portion of the automobile fluff  the steel fragments  were reusable. No testimony established that other fragments of automobile fluff, such as foam or glass, were being recycled. Schafer also testified that the automobile fluff in an unseparated state has no known commercial value. Record, pp. 286-87. Therefore, the evidence supports the trial court's conclusion that solid waste was being discarded by Head.
Second, Head claims an absence of evidence that he operated a facility contributing to pollution. However, James Coplen of Heritage Laboratories testified that the automobile fluff was contaminated with both PCBs and lead. Record, p. 359. Gregory Steele of the Indiana State Department of Health testified that PCBs are considered by the EPA to be a human carcinogen. Record, p. 381.
The fluff was stored on top of and adjacent to wetland connected by groundwater to the Grand Calumet River. Record, pp. 308-9. Moreover, IDEM Exhibit 6 disclosed that the automobile fluff was heaped on the ground without protective covering, allowing for transmission of automobile fluff particles into the open air. Additionally, Kevin Hogan, former PCB coordinator for IDEM, testified:
"I would be concerned that under the current handling practices we have, the fluff material would be subject to wind erosion, would could [sic] then blow it onto adjoining properties. It would also be subject to run-off erosion from rainfall events, snowfall events, which could, through the erosion process, assist the migration of any PCBs."
Record, p. 400.
The evidence supports a conclusion that Head's operation contributed to both air and water pollution, posing a hazard to the environment and to human life.
*525 Third, Head contends there is a lack of evidence that he improperly disposed of automobile fluff contaminated with PCBs. However, James Coplen examined samples of the automobile fluff transmitted to him by IDEM personnel and testified that one sample disclosed PCB levels.[5] The following PCB levels were described: PCB arochlor 1242 was found at 110 milligrams per kilogram (also known as parts per million); PCB arochlor 1254 was found at 21 milligrams per kilogram; and PCB arochlor 1260 was found at 4.2 milligrams per liter. Record, pp. 357-58. Kevin Hogan testified that it is improper to store solid waste with any detectable level of PCBs. Record, p. 397.[6]
Pursuant to I.C. 13-7-16.5-7, PCB contaminated material may be disposed of only in conformity with the rules of the solid waste management board. Disposal on land is not prescribed. There is ample evidence to support the trial court's conclusion that Head improperly disposed of PCB contaminated materials.
Fourth, Head contends that no evidence disclosed his operation of an "open dump." Pursuant to I.C. XX-X-X-XX, an "open dump" is the consolidation of solid waste at an unapproved disposal site, without cover and without regard to the possible contamination of water resources.
Contrary to Head's contention, evidence was presented that the automobile fluff was accumulated in large open air piles. IDEM inspector Schafer testified that the fluff lay on the ground uncovered. Record, p. 271. Furthermore, Schafer's inspection reports  admitted into evidence as Plaintiff's Exhibits 1, 3 and 4  disclosed that waste was being deposited into standing water and wetlands. Record, pp. 245, 253, 257.
Nancy Peterson, a United States Army Corp. biologist who inspected the 9th Street site, testified to her observation of "[a] large quantity, many thousands of cubic yards of automobile shredded waste on top of some other fill material placed in a wetland." Record, p. 308. She testified further that the wetland was connected to the Grand Calumet River. Record, p. 309.
The evidence supports the trial court's conclusion that Head was consolidating solid waste without cover and without regard to the possible contamination of water resources.
Fifth, Head contends there is a lack of evidence to show that his operation presented a threat to groundwater. Stuart Miller, an IDEM inspection supervisor who obtained samples of the automobile fluff, testified that the material was heavily contaminated with PCBs and lead. Record, p. 340. As noted supra, Nancy Peterson testified that the automobile fluff was piled in a wetland connected to the Grand Calumet River. This evidence is sufficient to support the trial court's conclusion that Head's operation presented an environmental threat to groundwater.

II.

Continuance
Head alleges that he was denied his rights under the United States and Indiana Constitutions because the trial court failed to grant his written and oral *526 requests for a continuance to facilitate discovery.
A trial court has discretion to grant or deny a continuance, which decision will not be overturned on appeal absent a clear abuse of that discretion. Danner v. Danner (1991), Ind. App., 573 N.E.2d 934, 937 trans. denied.
Head alleges that his rights in general were violated yet fails to offer any specific citation to authority. Pursuant to Ind.Appellate Rule 8.3(A)(7), he has waived this issue for appellate review. Clearly, Head has failed to demonstrate an abuse of discretion by the trial court.

III.

Testimony of Gregory Steele
Third, Head claims that the trial court erroneously admitted the testimony of expert witness Gregory Steele.
An expert may be qualified by practical experience as well as by formal training and whether he is qualified as an expert is a matter within the sound discretion of the trial court. Willis v. State (1987), Ind. App., 512 N.E.2d 871, 876, reh. denied, trans. denied.
Head has failed to offer any citation to authority to support his contention of error. Pursuant to Ind.Appellate Rule 8.3(A)(7), he has waived this issue for appellate review. He has demonstrated no abuse of discretion in the admission of Steele's testimony.

IV.

Contempt Citation
The trial court concluded that Head failed to comply with the December 4, 1992 order in that Head (1) failed to secure the site; (2) failed to contain the automobile fluff; (3) failed to dispose of the automobile fluff; (4) failed to procure a site assessment; (5) failed to reduce or eliminate the contamination; and (6) failed to pay the penalty assessed.
At the contempt hearing, Head asserted that compliance was impossible due to a lack of funds and lack of access to the property after the issuance of a restraining order.
Where a person seeks to show the court that his failure to obey an order was due to an inability to render obedience, the burden is on him to establish this fact. State ex rel. Thrasher v. Hayes (1978), 177 Ind. App. 196, 378 N.E.2d 924, 929, reh. denied.
The determination of whether a party is in contempt of court is a matter within the discretion of the trial court. State ex. rel. Prosser v. Ind. Waste Systems (1992), Ind. App., 603 N.E.2d 181, 185. We review the trial court's decision for an abuse of discretion and will reverse only if it is against the logic and effect of the facts and circumstances before the court. Id.
Here, the evidence presented would have supported a reasonable conclusion by the trial court that full compliance by the hearing date  at an estimated cost of $60,000,000.00  was impracticable. However, the evidence is uncontroverted that Head took no steps toward partial compliance; nor did he seek a stay of the trial court's clean-up order pending appeal. Moreover, although he was restrained from entering the automobile processing premises after a fire broke out at the site, Head enjoyed full access to the premises from December 4, 1992 to February 12, 1993.
Inasmuch as Head made no good faith effort to comply with the clean-up order in any respect, we cannot conclude that the trial court abused its discretion in finding Head in contempt of court.
Affirmed.
SHARPNACK, C.J., and HOFFMAN, J., concur.
NOTES
[1] Head unsuccessfully sought permission to enter the subject premises to remove metals and rubber from the automobile fluff before transmitting it to a USEPA site. Head anticipated that the proceeds from the sale of the metals and rubber could be used to defray the costs of compliance with the court's December 4, 1992 order. Record, pp. 26-32.
[2] IND. CODE 13-7-1-22 defines solid waste as "garbage, refuse, sludge from a waste treatment plant, sludge from a water supply treatment plant, sludge from an air pollution control facility, or other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, or agricultural operations or from community activities."
[3] I.C. XX-X-X-XX provides: (a) "Open dump" means the consolidation of solid waste from one (1) or more sources or the disposal of solid waste at a single disposal site that does not fulfill the requirements of a sanitary landfill or other land disposal method as prescribed by law or regulations, and that is established and maintained without cover and without regard to the possibilities of contamination of surface or subsurface water resources.

(b) "Open dumping" means the act of disposing of solid waste at an open dump."
[4] Head also makes a cursory argument that the automobile fluff is not "solid." Numerous photographs offered into evidence by IDEM refute this contention. Record, pp. 266-270.
[5] The parties dispute whether Plaintiff's Exhibit 8 (identified by James Coplen and disclosing PCB testing results) was admitted into evidence. The record discloses that Head's objection to Exhibit 8 was overruled. Record, p. 356. Moreover, Exhibit 8 is included in the record of proceedings. Apparently, the trial court intended the admission of Exhibit 8 but did not specifically state that the exhibit was admitted. Nevertheless, we rely upon the oral testimony concerning the PCB testing results rather than the printed results.
[6] Hogan testified as follows:

Q: So you're saying that it's improper to store this type of solid waste with any detectable level of PCBs in it?
A: That is correct.
Q: So one part per million 
A: Yes, ma'am.
Q:  would be 
A: One part per million 
Q:  an impermissible level?
A: One part per million when placed upon the ground would constitute improper disposal and be subject to be a violation.
Record, p. 397.