Linda EGAN, Ronald Droscha, d/b/a
Century 21 Creative Realty,
Appellants–Defendants,

v.

John W. BURKHART and Jacqueline
E. Burkhart, Appellees–Plaintiffs.

No. 52A02–9503–CV–139.

Court of Appeals of Indiana.

Oct. 26, 1995.

Jeffrey G. Price, Peru, for appellants.

Jeffrey L. Turner, Van Horne, Turner & Stuckey, Auburn, for appellees.

## OPINION

KIRSCH, Judge.

### STATEMENT OF THE CASE

Following a bench trial, Linda Egan and Ronald Droscha d/b/a Century 21 Creative REALTORS® (Brokers) appeal the trial court's judgment in favor of John W. Burkhart and Jaqueline E. Burkhart (Sellers).

We affirm.

### ISSUES

Brokers raise several issues which we restate as follows:

1. Does a real estate broker breach an implied duty of good faith when the broker loans the purchaser money for the down payment without disclosing the loan to the seller?

2. Whether the trial court's damage award was proper?

### FACTS AND PROCEDURAL HISTORY

Linda Egan was a licensed real estate salesperson for Ronald Droscha, a licensed real estate broker d/b/a Century 21 Creative REALTORS®. On April 13, 1990, Brokers entered into an exclusive listing contract with Sellers for the sale of Sellers' real estate. On September 10, 1990, Brokers' efforts produced a purchase agreement between Sellers and Harry and Gwendolyn Belanger (Buyers) in the amount of $35,000.00 with a ten percent down payment. The agreement was

subject to Buyers' obtaining Veterans Administration (VA) mortgage financing. If Buyers' application for VA financing was rejected, the agreement provided that Sellers would sell the property to Buyers on an installment land contract. Buyers were unsuccessful in their attempt to secure the loan because of recent credit problems. A mortgage broker recommended not applying for a mortgage loan for at least three years.

Three days prior to closing, Buyers asked Egan to loan them part of the down payment, stating that they were unable to raise it from their own resources or from family members. After considering the ethical and legal implications of such a loan, Egan loaned Buyers $2,200.00 of the $3,500.00 down payment. Sellers and Buyers closed the sale by entering into an installment contract for the sale of the real estate. Sellers paid Brokers a commission of $2,450.00 for the sale.

Sellers first learned of the loan approximately a year and a half after the sale closing when Buyers defaulted on their contract with Sellers and filed a bankruptcy petition listing Sellers' real estate as an asset and Sellers as a creditor. Upon Sellers' inquiry, Buyers replied that they were not supposed to tell Sellers about the loan of the down payment. Buyers were later discharged of their obligation to Sellers, vacated the property, and delivered a Quit Claim Deed to Sellers.

Sellers relisted the property with Brokers, who were unable to resell it. After this second listing expired, Sellers sold the property for $20,672.51 without the assistance of Brokers. In an effort to mitigate their losses, Sellers rented out the real estate between the time of repossession and resale.

The trial court found that Sellers would not have sold their property on contract to Buyers had they known of Buyers' continued financial difficulties, especially their inability to raise the ten percent down payment. The court also found that accepted lending industry standards required the disclosure of a down payment's source before a bank approves a mortgage; that the source of a down payment in real estate financing is an important factor in making a lending decision; that often banks deny a mortgage loan when a buyer borrows the down payment; and that a down payment borrowed from another source usually adversely affects the borrower's ability to repay the mortgage. The trial court concluded that Brokers breached their duty to Sellers in failing to disclose Egan's loan to Buyers, causing Sellers to suffer the following damages:

| | |
|---|---|
| a. Loss on resale | $14,327.49 |
| b. Real estate taxes until resale | 211.06 |
| c. Utility bills unpaid by Belangers and until resale | 433.28 |
| d. Insurance premiums from 11/5/90 to 6/18/93 | 418.67 |
| e. Pre-judgment interest at 8% per annum on above four entries from 1/29/93 to trial date | 1,742.72 |
| f. Improvements to facilitate resale | 145.93 |
| g. Attorney fees to regain possession of property and in this action | 8,626.76 |
| h. Less mitigating rent prior to resale | (1,387.50) |

*Record* at 120–21.

The trial court entered judgment for Sellers against Brokers in the sum of $24,489.41.[1]

---

1. We note that the trial court's award of these damages is $29.00 lower than the total of the itemized list. On appeal, neither party has challenged such difference, and we do not address it.

This appeal ensued.

## DISCUSSION

### I. STANDARD OF REVIEW

 In rendering judgment for Sellers, the trial court entered findings of fact and conclusions at the parties' request. On review we determine first, whether the evidence supports the trial court's findings, and second, whether those findings support the judgment. *Head v. Commissioner, Indiana Dep't of Envtl. Management* (1993), Ind. App., 626 N.E.2d 518, 524, *trans. denied.* The findings and the judgment resting thereon will not be set aside unless they are clearly erroneous, and "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). Findings of fact are clearly erroneous when unsupported by evidence in the record or reasonable inferences therefrom. *Head,* 626 N.E.2d at 524. A judgment is clearly erroneous when it is unsupported by the findings of fact and conclusions entered on the findings. *Id.*

### II. BREACH OF CONTRACT

██ Brokers first contend that there is no evidence to support the trial court's conclusion that Brokers breached the listing contract. They argue that the listing contract did not expressly prohibit Brokers from loaning money to Buyers, that the listing contract did not expressly provide that Brokers owed a duty of good faith to Sellers, and that Brokers performed their obligations under the listing contract. Alternatively, Brokers contend that because no duty of good faith was articulated in the listing contract, any breach of such duty constitutes a tort, not a breach of contract.

██ A real estate broker is an agent. *See* Restatement (Second) of Agency § 1 cmt. e (1958). *See also* 12 Am.Jur.2d *Brokers* § 3 (1964). Unless otherwise agreed, an agent owes a duty to his principal to act solely for the principal's benefit. *Potts v. Review Bd.* (1985), Ind.App., 475 N.E.2d 708, 711.

██ Indiana law has long recognized that a real estate broker must act with the strictest integrity in fulfilling the duty he owes his principal: "Law and morals ...

alike forbid that a man shall be the agent of two persons, and receive pay from both, ... where their interests are antagonistic.... [H]e is not likely to discharge his duty with fidelity to both." *Simonds v. Hoover* (1871), 35 Ind. 412, 414. An agent may not represent interests conflicting with those of his principal. This rule "stands upon the great moral obligation that one employed by another shall be honest in the performance of his duty to his employer, and not let self-interest conflict with his integrity." *Hammond v. Bookwalter* (1894), 12 Ind.App. 177, 181, 39 N.E. 872, 873.

Our supreme court has held that this duty of good faith encompasses a broker's responsibility to disclose all facts to his principal which are material or potentially so to the matter at hand:

> "A broker owes to his principal the duty to act with the utmost good faith in all their dealings with each other, and is under the legal obligation to disclose to a person by whom he is employed as broker all facts within his knowledge or which he may learn in the course of a transaction in behalf of such person that are or may be material to the matter in which he is employed, or which might influence the action of his principal in relation thereto."

*Mason Produce Co. v. Harry C. Gilbert Co.* (1924), 194 Ind. 462, 468, 141 N.E. 613, 615. *See also Loer v. Neal* (1956), 127 Ind.App. 246, 254, 137 N.E.2d 728, 731. Here, Brokers breached their obligation of good faith by failing to disclose both the fact of the loan and the fact of Buyers' weakened financial condition which they had expressed to Brokers when requesting the loan.

██ Brokers next contend that they did not breach the contract because "The object of the listing contract was to sell the real estate to a willing buyer [and] [t]hat is precisely what [Brokers] did." *Appellant's Brief* at 14. We disagree. A review of the record reveals that this is an incomplete characterization of Brokers' obligations under the contract, which were to assist Sellers in finding "a purchaser ready, willing and able to buy said real estate." *Record* at 149A. Although Buyers were willing, they

were neither ready, nor able, because they lacked the down payment to close the sale. By presenting Buyers to Sellers without disclosing either the existence of or Buyers' need for the loan, Brokers breached both their express and implied obligations under the listing contract.

■ Brokers finally contend that if they breached an implied duty of good faith, the breach is a tort and not a contractual breach, relying on *Erie Ins. Co. v. Hickman by Smith* (1993), Ind., 622 N.E.2d 515. In *Erie*, our supreme court recognized a cause of action in tort for the breach of a duty of good faith owed by an insurer to its insureds where the insureds were wrongly denied coverage by the insurers. In recognizing a tortious breach of the duty of good faith, the court noted that "the recognition of an independent tort for the breach of the insurer's obligation to exercise good faith provides the tort upon which punitive damages may be based." *Id.* at 520. The court characterized the tortious breach of the duty of good faith as a "new cause of action." *Id.*

■ The *Erie* court's recognition of a cause of action in tort for the breach of a duty of good faith does not, however, preclude a cause of action in contract for the same breach. The court specifically pointed out that "an insured who believes that an insurance claim has been wrongly denied may have available two distinct legal theories, one in contract and one in tort, each with separate, although often overlapping, elements, defenses and recoveries." *Id.* The court also noted that wrongly denied insurance claims do not always give rise to a tortious breach of duty, even if it is ultimately determined that the insurer breached its contract, so long as the denial was issued in good faith. *Id.* We hold that Brokers breached their contractual duty of good faith arising under their agency relationship with Sellers by entering into the loan and failing to disclose that arrangement and its genesis to Sellers. The fact that such breaches may also constitute an independent tort [2] does not make it any less of a contractual breach.

Moreover, Brokers' breach was material. The fact of the loan went to Buyers' creditworthiness and the trial court found that Sellers would not have entered into the land sale contract had they known of it.

## III. DAMAGES

■ Brokers next contend that even if they breached the listing contract, Sellers' damages flow not from that breach but rather from Buyers' default on the land contract. "A breaching party is liable for damages which are the direct, probable, and proximate result of its breach." *Indiana Ins. Co. v. Plummer Power Mower and Tool Rental* (1992), Ind.App., 590 N.E.2d 1085, 1092. Contract damages are limited by what was reasonably foreseeable at the time the contract was entered into. *Id.* Here, the trial court awarded damages for loss on resale, real estate taxes, utility bills, insurance premiums, prejudgment interest, and attorney fees.

Regarding the sale price differential, the record supports the diminution in the property value resulting from entering into the initial sale. The initial sale price to Buyers was $35,000. The subsequent sale price was $20,672.51. The two sale prices constitute evidence supporting the trial court's finding of a diminution in the value of the real estate of $14,527.49 between the date of the original sale and the date of resale. This diminution was a loss sustained by Sellers and resulted from the breach. Similarly, the taxes, utility bills, insurance premiums and improvement costs, incurred between the original and the subsequent sale, flow from the breach as losses Sellers suffered as a result of entering into the sale with Buyers. By making the loan to Buyers, Brokers facilitated the purchase of the real estate by Buyers, who were not creditworthy. It is reasonably foreseeable that non-creditworthy buyers may default on their purchase obligations. All of Sellers' damages result from such default and were foreseeable at the time Brokers entered into the listing agreement.

2. In this case the trial court found no independent tort and rejected Sellers' claim for punitive damages.

██ Brokers also contend that Sellers should not recover their attorney fees. The rule in Indiana is that each party must pay such party's own attorney fees absent a statute or agreement providing otherwise. *Cap Gemini America, Inc. v. Judd* (1992), Ind. App., 597 N.E.2d 1272, 1288. Here, the attorney fees awarded by the trial court are of two types: fees incurred in recovering the property from Buyers in prior proceedings and fees incurred in this action. The attorney fees incurred by Sellers in recovering the property from Buyers' bankruptcy proceedings were a consequence of Buyers' default and, hence, of Brokers' breach. Accordingly, they were foreseeable and thus are recoverable as damages. Attorney fees in this proceeding are recoverable under the listing agreement which provided: "This contract is enforceable without relief from valuation and appraisement laws and with attorneys fees." *Record* at 149–A. The trial court did not err in awarding attorney fees from this and prior proceedings.

Affirmed.

FRIEDLANDER and GARRARD, JJ., concur.