**FIRSTMARK STANDARD LIFE INSURANCE COMPANY,
Appellant–Defendant,**

v.

**Marie I. GOSS, Appellee–Plaintiff.**

**No. 49A02–9708–CV–582.**

Court of Appeals of Indiana.

Aug. 20, 1998.

---

John L. Stewart, Cohen & Malad, P.C., Indianapolis, for Appellant–Defendant.

Terry R. Curry, Butler, Hahn, Hill & Schembs, Indianapolis, Elizabeth G. Filipow, Bradley J. Dougherty, Johnson, Lawhead, Buth & Pope, P.C., Indianapolis, for Appellee–Plaintiff.

## OPINION

GARRARD, Judge.

### Case Summary

Firstmark Standard Life Insurance Company ("Firstmark") appeals a jury verdict in favor of Marie Goss ("Goss"). We affirm in part and reverse and remand in part.

### Issues

Firstmark presents four issues which we consolidate and rephrase as follows:

I. Whether the jury's verdict that Firstmark breached an insurance contract was supported by substantive evidence of probative value;

II. Whether the trial court properly utilized compounded prejudgment interest on the jury's verdict; and,

III. Whether damages are recoverable for emotional distress and mental anguish in an action against an insurer for breach of its duty of good faith and fair dealing, and, if so, whether substantive evidence supported the jury's award in this regard.

In her cross appeal, Goss contends that the trial court erred in granting Firstmark's motion for judgment on the evidence on her claim for punitive damages.

### Facts and Procedural History

Firstmark issued a life insurance policy to Goss' husband, Donald, on May 4, 1976. The policy was assigned to Goss later that year. The contract contained a death benefit of $75,000 at the time of issuance, and was the type that accumulated dividends. The policyholder could elect to have dividends applied under one of five options. The relevant option, number three, provided that dividends could be "used to purchase additional participating paid-up level insurance of the same type (herein called dividend additions)." Record at 18. The policy further provided:

> Any option may be elected in the application for this policy or by written request to the Company at its home office and such election will be effective until revoked; provided that any election of Dividend Option 5 shall be subject to evidence of insurability satisfactory to the Company. Election of any option or revocation thereof shall apply only to dividends becoming due thereafter, except that, at the option of the Owner, election of any option may be made retroactive to a dividend due or within thirty-one days prior thereto. If no dividend option is elected prior to the date a dividend becomes due or within thirty-one days thereafter, such dividend will be applied by the Company under Dividend Option 3 unless the laws of the state in which this policy is delivered require otherwise.

*Id.*

In the fall of 1987, Goss contacted Firstmark with inquiries regarding the type of policy she owned and the benefits that were payable. Michael Davis, a customer service representative for Firstmark, sent Goss a letter on December 3, 1987, informing her that the accumulated dividends on the policy were in the amount of $7,785.75. Davis also informed Goss of her option to use the dividends to purchase $44,025.00 of additional paid-up insurance which would enable her to avoid paying tax on interest income attributable to her.

Davis, however, miscalculated the amount of paid-up insurance that could be purchased under the dividend option. This error was the result of adding up yearly figures for paid-up insurance for each year Donald owned the policy, when in fact the figures for paid-up insurance were cumulative for each year and included all prior years paid-up insurance. Record at 915–16. Davis requested in his December 3 letter that Goss advise Firstmark as to how she wished the dividends to be applied.

Davis wrote Goss again on January 22, 1988, requesting that she specify which dividend option she wished to elect because he had not received any response to his previous

correspondence. The letter stated that if no specific election was received within fourteen days of the date of the letter, "we will assume that you wish the dividends to be utilized to purchase paid-up additional insurance and proceed accordingly." Record at 523.

In a letter dated March 5, 1988, Davis notified Goss that the dividends had been used to purchase $44,025.00 in additional paid-up insurance because Firstmark had not received a reply to its letter of January 22. On September 26, 1988, in response to a specific inquiry from Goss regarding surrender of the policy, Davis wrote Goss a letter which incorporated the miscalculation of the amount of additional paid-up insurance, and erroneously indicated that the amount of insurance coverage totaled $121,434.51.[1]

Donald died on December 28, 1988, after suffering a heart attack. Goss demanded payment under the policy, and Firstmark paid the sum of $85,200 along with interest in the amount of $3,769.37. Goss filed a breach of contract action against Firstmark on June 7, 1990, demanding an additional $36,234.51 allegedly due under the contract. Firstmark filed a motion for summary judgment on February 1, 1994, which the trial court subsequently granted.

Goss appealed. In an unpublished opinion, another panel of this court reversed the grant of summary judgment and remanded the case to the trial court for further proceedings. In October of 1995, Goss moved to file an amended complaint to assert a claim for punitive damages against Firstmark. The trial court granted the motion and Goss filed her amended complaint. Firstmark filed its answer and affirmative defenses.

A jury trial was held on April 22 and 23 of 1997. At the close of the evidence, Firstmark moved for judgment on the evidence on Goss' claim for emotional distress caused by an insurer's breach of its duty of good faith. The motion was denied. Firstmark renewed its motion for judgment on the evidence on the claim for punitive damages. The trial court granted that motion and withdrew the claim for assessment of punitive damages

from the jury's consideration. Goss moved to reconsider the granting of Firstmark's motion for judgment on the evidence on her claim for punitive damages. The trial court denied both that motion as well as a motion to find as a matter of law that there was a contract created between the parties.

After the jury found in favor of Goss, the trial court accepted authority from both parties regarding whether prejudgment interest was to be simple or compounded. The May 9, 1997 judgment provided:

> [T]he issues [have] been duly tried with the jury rendering a verdict for [Goss] for contractual damages of $36,234.51 and compensatory damages of $34,630.00. The parties have further stipulated and agreed that the Court shall determine prejudgment interest upon the contractual damages from December 28, 1988, until the date of the verdict. The Court thus awards prejudgment interest to [Goss] in the sum of $34,101.66.
>
> It is therefore ORDERED, ADJUDGED, AND DECREED that [Goss] shall recover from [Firstmark] the sum of $104,966.17, together with interest thereon at the rate of eight percent (8%) as provided by law, costs to be paid by [Firstmark].

Record at 450.

### Discussion and Decision

#### I. Verdict Supported

■ Firstmark challenges the jury's finding that it breached the insurance contract. Specifically, Firstmark asserts that when Davis and Goss corresponded about the insurance contract, neither of them understood that a new offer was being made. Thus, there could not have been an acceptance that altered the existing contract. Therefore, Goss should not have received the benefit of a bargain which was never intended.

■ An insurance policy is a contract between the parties, and the objective is to ascertain and enforce the intent of the parties to the contract. *Stockberger v. Meridian Mut. Ins. Co.*, 182 Ind.App. 566, 395 N.E.2d 1272 (1979). In determining whether there

---

1. Two other insurance companies had refused    Donald's request for insurance.

has been a meeting of the minds, acceptance may be by any acts, words, or deed of the insured which manifest an intent to accept. *Cook v. Michigan Mut. Liab. Co.*, 154 Ind. App. 346, 289 N.E.2d 754 (1972). Any facts demonstrating a meeting of the minds could support a finding that a contract was in effect. *Id.*

■■■ "[T]he jury, as the trier of fact, must weigh the evidence, draw any reasonable inferences, resolve conflicts in the evidence, determine the credibility of witnesses and decide in whose favor the evidence preponderates." *Planned Parenthood of Northwest Indiana, Inc. v. Vines*, 543 N.E.2d 654, 658 (Ind.Ct.App.1989), *trans. denied.* Consequently, our standard of review allows us to overturn a jury's verdict only if there is no evidence on the elements of the plaintiff's claim which will support the verdict. *Id.*

Viewing the record in the light most favorable to the verdict, and without reweighing evidence or rejudging credibility, we conclude that the record supports an inference that Goss accepted the offer in precisely the manner that was specified in Davis' letter of January 22, 1988. Rather than completely reiterating our discussion on this issue, we refer Firstmark to our prior memorandum decision. *Goss v. Firstmark Standard Life Ins. Co.*, No. 49A02–9409–CV–518, 647 N.E.2d 705 (Ind.Ct.App. Mar.31, 1995).

## II. Compounded Prejudgment Interest

■ The trial court's judgment awarded prejudgment interest compounded monthly from December 28, 1988, the date of Donald's death. Firstmark contends that the prejudgment interest should not have been compounded absent an underlying agreement of the parties. Instead, it urges that simple interest should have been applied. We agree.

■ An award of prejudgment interest in a contract claim is warranted if the terms of the contract make the claim ascertainable and the amount of the claim rests on mere mathematical computation. *Sand Creek Country Club, Ltd. v. CSO Architects, Inc.*, 582 N.E.2d 872, 876 (Ind.Ct.App.1991).

Firstmark does not argue that prejudgment interest was inappropriate.

At issue is whether Indiana Code 24–4.6–1–104, enacted in 1990, governs. That statute provides:

(a) The parties may agree upon any method of computing interest on a loan or a forbearance of money, goods, or things in action if the amount of interest on the unpaid balances of the principal does not exceed any limitation imposed by law upon charges incident to the extension of credit.

(b) Methods of computing interest to which parties may agree under this section include the following:

(1) Simple interest on the unpaid balances of the principal.

(2) Simple interest on the outstanding balance of the principal to which is added past due installments of interest, the sum of which forms the principal upon which interest thereafter shall be computed. The addition to principal in this manner may occur repeatedly but not more frequently than daily.

(c) Unless the parties agree otherwise, the method of computing interest agreed upon under this section continues to apply after the term of the loan or forbearance, including after the award of a judgment on the loan or forbearance, until all principal and interest and the amount of any judgment are paid.

(d) If the parties do not agree on the method of computation, interest shall be computed and charged:

(1) at the rate agreed to by the parties or as provided in section 102 of this chapter; and

(2) according to the method described in subsection (b)(2).

Thus, if this statute controls, under subsection (d)(2) because the parties had no express agreement on the method of computation, compound interest would apply.

Initially, we note that prejudgment interest has traditionally been simple interest. If the prerequisites are met it may be awarded apart from statute and is considered damages for the loss of use of the money owed.

*Koppers Co. v. Inland Steel Co.,* 498 N.E.2d 1247 (Ind.Ct.App.1986).

If IC 24–4.6–1–104 applies, then the ordinary rule for prejudgment interest cases will be to require compound interest because ordinarily there will be no express agreement on the method of computation and that will trigger subsection (d)(2). We do not believe that this was the intention of the legislature in enacting this section. Our belief is underscored by the terms of subsection (b)(2) which would require the court to determine within its absolute discretion whether the interest should compound daily, annually or on some time frame in between.

The entire section commences with the direction that "The parties may agree upon any method of computing interest on a loan or forbearance...." We think this language was also intended to provide a limitation. That is to say, in order to invoke the statute, the parties must themselves have *agreed* to the payment of interest.[2] Read in this context, the statute makes considerable sense. Once the parties have expressly agreed to interest and a method of computing it, the agreement controls. If they fail to express a complete "method," the statute provides the basis for the computation.

Since there was no contractual agreement here for the payment of interest, we conclude that the court should have awarded only simple interest in determining the prejudgment interest. *See Hudson v. McClaskey,* 641 N.E.2d 36, 43 (Ind.Ct.App.1994).

### III. Emotional Distress and Mental Anguish

Citing *Shuamber,* Firstmark argues that a person who suffers an economic loss due to the negligence of another and suffers no physical impact may not recover for emotional distress and mental anguish. *Shuamber v.*

*Henderson,* 579 N.E.2d 452 (Ind.1991). Firstmark claims that there was no evidence of either physical impact to Goss or intent by Firstmark to cause her emotional distress.

In *Shuamber,* our supreme court set out the traditional impact rule, its background, and its exceptions. *Id.* at 454. It then noted that under the traditional impact rule as well as the exceptions thereto, no recovery for emotional damages was available to the plaintiff in *Shuamber.* Realizing that the mother and daughter who watched their son/brother die in a car accident would have no chance to recover emotional damages resulting from seeing such trauma, our supreme court then announced a modification to the traditional impact rule in negligence cases:

> When, as here, a plaintiff sustains a direct impact by the negligence of another and, by virtue of that direct involvement sustains an emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person, we hold that such a plaintiff is entitled to maintain an action to recover for that emotional trauma without regard to whether the emotional trauma arises out of or accompanies any physical injury to the plaintiff.

*Id.* at 456. Since *Shuamber,* courts have had various occasions to apply and interpret the modified impact rule as well as the exceptions to the traditional impact rule,[3] though not always with consensus.[4]

In the present case, the distress claimed by Goss was not the result of some physical injury inflicted upon her by Firstmark or by anyone else. In fact, Goss suffered no physical injury whatsoever. *Cf. Conder,* 691 N.E.2d 490 (plaintiff injured self while pounding on vehicle in attempt to make it stop). Thus, Goss could not recover under

---

**2.** Accordingly, we need not delve into the murky meanings of a forbearance of money, goods or things in action.

**3.** *See, e.g., Adams v. Clean Air Systems, Inc.,* 586 N.E.2d 940 (Ind.Ct.App.1992); *Roe v. North Adams Community School Corp.,* 647 N.E.2d 655 (Ind.Ct.App.1995), *trans. denied.*

**4.** *See Bader v. Johnson,* 675 N.E.2d 1119, (Ind.Ct. App.1997) (resulting in a lead opinion, a second

opinion concurring in part with the lead and concurring in result in part with a separate opinion, and a third opinion concurring in part and dissenting in part; our supreme court has granted transfer, but has not yet issued an opinion in this case); *Conder v. Wood,* 691 N.E.2d 490 (Ind. Ct.App.1998) (resulting in a majority and a dissent), *trans. pending.*

either the traditional or the modified impact rules. Goss seems to contend that her case falls under the category of an exception to the impact rule. She asserts that her distress was a byproduct of Firstmark's commission of the tort of breach of its duty of good faith. That is, by breaching its duty of good faith to Goss, Firstmark committed an intentional tort which would foreseeably provoke an emotional disturbance of the kind normally to be aroused in the mind of a reasonable person. *See Etienne v. Caputi,* 679 N.E.2d 922, 925 (Ind.Ct.App.1997).

An insured who believes that an insurance claim has been wrongly denied may have available two distinct legal theories, one in contract and one in tort, each with separate, although often overlapping, elements, defenses and recoveries. *Egan v. Burkhart,* 657 N.E.2d 401, 405 (Ind.Ct.App.1995). In *Erie,* our supreme court first recognized a cause of action in tort for the breach of a duty of good faith owed by an insurer to its insureds where the insureds were wrongly denied coverage by the insurer. *Erie Ins. Co. v. Hickman by Smith,* 622 N.E.2d 515 (Ind.1993). We have stated:

> The obligation of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation includes the obligation to refrain from making an unfounded refusal to pay policy proceeds, causing an unfounded delay in making payment, deceiving the insured, or exercising any unfair advantage to pressure the insured into settlement of his claim. The insurer does not necessarily breach its duty of good faith every time it erroneously denies an insurance claim; a *good faith dispute about the amount of a claim* will not supply the basis for recovery under the theory that the insurer tortiously breached its duty to exercise good faith with respect to its insured.

*Johnston v. State Farm Mut. Auto. Ins. Co.,* 667 N.E.2d 802, 804 (Ind.Ct.App.1996), *trans. denied.*

Goss cited the following "glaring examples" of Firstmark's breach of its duty of good faith:

i. The worksheet prepared by Humphries [Firstmark's former death claims supervisor] reflects that it was "approved" by "lsm." Humphries—who had not worked at Firstmark since 1991—immediately identified "lsm" as Linda Mitchell, who reported directly to Hochgesang [head of Firstmark's actuary department]. Hochgesang, on the other hand, denied in deposition, in interrogatories directed to Firstmark, and at trial that he was able to identify who "lsm" was.

ii. Hochgesang testified in deposition that the changes to the worksheet were done in the claims department by Humphries. However, Hochgesang acknowledged at trial that the changes were made in the actuarial department and that many of the altered amounts were in his handwriting.

iii. Firstmark and Hochgesang continue to insist that Davis miscalculated paid-up additions, as set forth in Davis' letter of December 3, 1987, by incorrectly interpreting nonforfeiture tables or rate charts. However, Hochgesang was unable to say how such rate charts are maintained at Firstmark or how an employee would be trained in its use. Indeed, in response to Marie's request for production of instruction sheets or guidelines for such rate charts, Firstmark responded that no such documents exist. Moreover, although Davis in 1990 prepared two separate memoranda regarding how he calculated the dividends and paid-up additions, Davis did not in any manner state that he had made the calculations incorrectly.

iv. After Donald's death, Hochgesang undertook his own calculation of estimated paid-up additions on a copy of Davis' letter dated March 5, 1988. He testified he did so because the reference by Davis to $44,025.00 in paid-up additions was unreasonable and made no sense to Hochgesang. Hochgesang's determination that it was necessary to reduce the paid-up additions by over $37,000.00 because it made no sense to him came only four months after Firstmark and its holding company was placed in bankruptcy.

Goss' brief at 11–12 (record citations omitted).

Assuming all of the above is completely true, there is insufficient evidence as a matter of law to show a breach of an insurer's duty of good faith toward an insured. There is no evidence that Firstmark denied liability knowing that there was no rational, principled basis for doing so. There was no indication that Firstmark caused an unfounded delay in making payment, deceived Goss, or exercised any unfair advantage to pressure Goss into a settlement of her claim. *See Erie,* 622 N.E.2d at 519. In reaching our conclusion that the tort was not proved, we again stress the high standard required to demonstrate a breach of an insurer's duty of good faith:

> [The tort of breach of duty of good faith] does not arise every time an insurance claim is erroneously denied. [A] good faith dispute about the amount of a valid claim or about whether the insured has a valid claim at all will not supply the grounds of recovery in tort for the breach of the obligation to exercise good faith. This is so even if it is ultimately determined that the insurer breached its contract. That insurance companies may, in good faith, dispute claims, has long been the rule in Indiana.

*Id.* at 520. Without proving Firstmark violated its duty of good faith, i.e. committed the tort, there is no basis for an award of any damages based upon the tort. Accordingly, like our supreme court in *Erie,* we leave for another day the determination of the precise nature and extent of damages recoverable in such an action. *Id.* at 519.

### IV. Judgment on the Evidence for Punitive Damages

Goss asserts that the trial court applied an incorrect standard in granting Firstmark's motion for judgment on the evidence as to punitive damages. She states that there was evidence to support the submission of the punitive damages claim to the jury.

In reviewing a trial court's ruling on a motion for judgment on the evidence, we apply the same standard as the trial court and look only to the evidence and reasonable inference most favorable to the non-moving party. *Smith v. Beaty,* 639 N.E.2d 1029, 1032 (Ind.Ct.App.1994). When the defendant moves for judgment on the evidence at the close of the plaintiff's evidence in a jury trial, the motion should be granted only where an issue in the case or an essential element of the claim is not supported by sufficient evidence. *Id.; see* Ind.Trial Rule 50(A). Put another way, the court should withdraw the issue from the jury only if there is a complete failure of proof on at least one essential element of the plaintiff's case. *Smith,* 639 N.E.2d at 1032. If there is any probative evidence or reasonable inference to be drawn from the evidence or if there is evidence allowing reasonable people to differ as to the result, judgment on the evidence is improper. *Id.*

Regarding punitive damages in the insurance context, our supreme court recently stated:

> Under Indiana law, in order for a plaintiff to recover punitive damages from a breach of contract claim, the plaintiff must plead and prove the existence of an independent tort of the kind for which Indiana law recognizes that punitive damages may be awarded. An insurance company has a duty to deal with its insured in good faith, and the breach of that duty allows for a cause of action in tort. The erroneous denial of coverage does not necessarily violate an insurance company's duty of good faith. Furthermore, proof that a tort was committed does not necessarily establish the right to punitive damages. Punitive damages may be awarded only if there is clear and convincing evidence that defendant acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing.

*USA Life One Ins. Co. of Ind. v. Nuckolls,* 682 N.E.2d 534, 541 (Ind.1997) (internal quotations and citations omitted); *see also Johnston,* 667 N.E.2d at 804.

In recognizing a tortious breach of the duty of good faith, our supreme court noted that the recognition of an independent tort for the breach of the insurer's obligation to exercise good faith provides the tort upon

which punitive damages may be based. *Erie,* 622 N.E.2d at 520. In light of our decision on Issue III, *supra,* the punitive damages issue becomes moot. There is no tort upon which to base an award of punitive damages.

Accordingly, we affirm the award of damages for breach of contract and the judgment on the evidence against the award of punitive damages, we reverse the award of compensatory damages for emotional distress and the award of compounded prejudgment interest, and we remand for re-entry of judgment for contract damages together with prejudgment interest computed as simple interest from December 28, 1988.

Affirmed in part and reversed and remanded in part.

RUCKER and FRIEDLANDER, JJ., concur.