**James M. ENRIGHT, Plaintiff and Counter–Defendant,**

v.

**AUTO-OWNERS INSURANCE COMPANY, Defendant and Counter–Claimant.**

No. 1:91–CV–108.

United States District Court, N.D. Indiana, Fort Wayne Division.

March 12, 1998.

J. Timothy McCaulay, Helmke Beams Boyer and Wagner, Fort Wayne, IN, Michael H. Fabian, Stuart A. Sklar, Fabian Sklar and Davis, Farmington Hills, MI, for James M. Enright.

Craig J. Bobay, Carolyn M. Trier, Hunt and Suedhoff, Fort Wayne, IN, Charles T. Jennings, Carmel, IN, Brian L. England, Hunt Suedhoff, Borror, & Eilbacher, Fort Wayne, IN, for Auto–Owners Ins. Co.

### PRETRIAL SCHEDULING ORDER

WILLIAM C. LEE, Chief Judge.

The court has determined that in order to ensure the interests of justice and to most effectively utilize the court's resources, it is imperative that certain time restrictions be put in place prior to the trial of this cause. The court appreciates that it would be useful to the parties to be advised of these time limits well in advance of trial so that they may plan their presentations accordingly and most effectively. Accordingly, for the reasons discussed below, the court hereby enters this Pretrial Scheduling Order *sua sponte.*

### DISCUSSION

The trial of this action is currently scheduled to commence on June 8, 1998, more than seven years after the case was filed. As this court explained in one of several previous Orders entered in this case, this lawsuit has

a tortured history. The case has dragged on for years, having been complicated by stays in the proceedings (including a lengthy stay to await the outcome of state criminal proceedings related to the house fire that led to this bad-faith claim), countless discovery disputes, a bankruptcy by the Plaintiff, and, most significantly, the general machinations of the parties. The court's file in this case presently consists of 19 volumes and more than 500 docket entries. There have been literally dozens of discovery disputes and various motions by both sides. The court is currently working to resolve nearly three dozen motions in limine, three motions for sanctions (one filed by the Plaintiff and two by the Defendant), and four motions for partial summary judgment. And yet this is not, as one might assume from the statistics just mentioned, a complex piece of litigation. The entire case stems from a house fire that occurred at Enright's residence in Hamilton, Indiana. Suspecting that the fire was arson and that Enright himself set it, Auto–Owners denied coverage. This bad-faith suit resulted from that denial. But the parties have managed to turn this seemingly straightforward case into one of massive proportion. This court, like all other district courts, is not unfamiliar with large and complex cases. In fact, another recent insurance case filed in this court, *Indiana Gas Company, Inc., et al. v. Aetna Casualty & Surety Company et al.*, involved more than two dozen volumes of files and over 560 docket entries. However, that case involved numerous complex issues of insurance and environmental law, and involved more than two dozen parties. Despite that, the case was resolved in approximately two years. It is absurd that the present bad faith case has been litigated in such a manner as to generate an equivalent amount of paper as was generated in a highly complex insurance coverage dispute. And, despite their protestations to the contrary (as illustrated in part by the cross-motions for sanctions), the court is convinced that both parties to this action bear responsibility for turning this case into the most over-litigated, overly contentious case on this court's docket in the last 17 years. Having stated that, the court is not unmindful of the fact that there is possibly much at stake in this action. Enright is seeking compensatory as well as punitive damages and so Auto–Owners could

conceivably face a very large judgment. On the other hand, of course, Enright could walk away with absolutely nothing after more than seven years of litigation. This court stands ready and willing to try this case so that a jury can, once and for all, and one way or the other, put this lawsuit out of its misery. Still, the court has no intention of allowing the parties to conduct themselves at trial in the same contentious and inefficient manner they have exhibited up to this point. Allowing the trial of this case to drag on for an inordinate period (the parties estimated that trial would take two weeks) would be a disservice to the litigants, the jurors, and the taxpayers, and would result an unnecessary drain on the resources of the court. Again, this is simply not a complex case. As a result, the court hereby directs that the parties will be permitted a total of 15 hours per side in which to try this case. This 15–hour time limit will include opening and closing statements, direct examination, and cross-examination. The parties are, of course, free to present as many of their witnesses and any other evidence they deem necessary within the time permitted. Also, the 30–hour total time limit will not apply to recesses, court-initiated bench conferences or any interruptions of trial time for any court business.

The placing of time limits on litigants at trial is not often done (generally because it is not necessary), although it is far from unprecedented. Virtually all federal courts that have dealt with the issue recognize that time limits are sometimes a necessary and effective tool to help expedite trials by forcing the parties to crystallize their arguments, avoid the introduction of cumulative evidence, and present their cases to the jury in a clear and concise manner. The Seventh Circuit has explained that " 'it has never been supposed that a party has an absolute right to force upon an unwilling tribunal an unending and superfluous mass of testimony limited only by his own judgment and whim .... The rule should merely declare the trial court empowered to enforce a limit when in its discretion the situation justifies this.' " *MCI Communications v. American Tel. & Tel. Co.*, 708 F.2d 1081, 1171 (7th Cir.), *cert. denied,* 464 U.S. 891, 104 S.Ct. 234, 78

L.Ed.2d 226 (1983) (quoting 6 Wigmore, Evidence § 1907 (Chadbourne Rev.1976)). Addressing such time restrictions, the Seventh Circuit concluded that "[t]his approach is not, *per se*, an abuse of discretion." *Id.* Rather, the Seventh Circuit acknowledged that such limitations may indeed be appropriate, "provided that witnesses are not excluded on the basis of mere numbers." *Id.* The court explained that "[t]he circumstances of each individual case must be weighed by the trial judge, who is in the best position to determine how long it may reasonably take to try the case." *Id.* at 1172. By imposing the 30-hour time limit in this case, the court does not seek to arbitrarily limit the number of witnesses the parties may present. Rather, the goal is to induce the parties to elicit testimony through well-planned and thoughtful direct and cross-examination, and to avoid calling witnesses whose testimony is merely cumulative. Streamlining the presentation of their cases should not be an undue burden for either side. Both Plaintiff's counsel and defense counsel are intimately familiar with the facts, issues and evidence to be debated at trial, having litigated this case so thoroughly (or, in the court's opinion, having *over*-litigated it so dramatically) over many years. Despite the massive amount of discovery that has been conducted, this case, as the court has now stated several times, is not very complex. Both sides seek to call expert witnesses to testify as to their theories about the cause and origin of the fire and the handling of the subsequent investigations of that fire.[1] The testimony of the Plaintiff and the testimony of various officers or employees of Auto–Owners will obviously be crucial. The court has no intention of micro-managing the parties' cases. Each side is free to present however many witnesses they deem necessary. It is for the parties, and not the court, to make the determination about which witnesses are truly necessary and, in addition, how much of each witness' testimony is necessary. The goal of imposing time limits in this case is to prevent the parties from

attempting to "pile on" cumulative testimony and other evidence. It would not seem necessary, for example, for Auto–Owners to call a parade of fact and expert witnesses to establish that it had evidence that the fire was deliberately set. As one district judge noted in an order imposing time limits in a case, his court "was once subjected to the calling of ten firemen in an arson prosecution to prove a house burned down." *United States v. Reaves*, 636 F.Supp. 1575, 1576 (E.D.Ky.1986). This is precisely the type of approach to the presentation of evidence that this present Order is intended to prevent.

In *MCI Communications*, the Seventh Circuit upheld a challenge to the district court, which had imposed a 26-day time limit for the presentation of each party's case-in-chief. Prior to the imposition of the court's time restrictions, Defendant AT & T had predicted that the case, which was a major antitrust suit, would take eight to nine months to try. Nonetheless, the Seventh Circuit held that the district court's time limit was not unreasonable under the circumstances, let alone a denial of due process.

The Seventh Circuit is certainly not alone in recognizing the validity of time restrictions in both civil and criminal trials. For example, the Third Circuit addressed the issue in *Duquesne Light Company v. Westinghouse Electric Corporation*, 66 F.3d 604 (3rd Cir. 1995). That court wrote:

Although the procedural rules governing federal civil litigation do not explicitly authorize a district court to set time limits for a trial, a district court has inherent power "to control cases before it," provided it exercises the power " 'in a manner that is in harmony with the Federal Rules of Civil Procedure.' " *G. Heileman Brewing Co. v. Joseph Oat Corp.*, 871 F.2d 648, 652 (7th Cir.1989) (en banc) (quoting *Landau & Cleary, Ltd. v. Hribar Trucking, Inc.*, 867 F.2d 996, 1002 (7th Cir.1989)). The rules repeatedly embody the principle that

---

1. The court is mindful of the fact that many of the *motions in limine* filed by the parties are directed at various fact and expert witnesses. The court's rulings on many of those motions in limine will very likely influence the number of witnesses each side may call and/or the type and amount of evidence the parties may present on

specific issues. Accordingly, the court has already begun reviewing these *motions* and will rule on all of them as expeditiously as possible, so as to enable the parties to more easily comply with the restrictions imposed by this Order as they prepare for trial.

trial should be both fair and efficient. Thus, the Federal Rules of Civil Procedure "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed. R.Civ.P. 1. Similarly, the Federal Rules of Evidence "shall be construed to secure ... elimination of unjustifiable expense and delay." Fed.R.Evid. 102. More particularly, Fed.R.Evid. 403 allows judges to exclude even relevant evidence because of "considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Numerous courts have inferred from these provisions a court's authority to set time limits.

*Duquesne,* 66 F.3d at 609. The Third Circuit then went on to cite several cases in which courts had imposed time limits of one sort or another. These cases included, among others, *MCI Communications, supra; United States v. Reaves, supra;* and *Harris v. Marsh,* 679 F.Supp. 1204, 1235 & n. 42 (E.D.N.C.1987), *rev'd in part on other grounds,* 914 F.2d 525 (4th Cir.1990), *cert. denied,* 499 U.S. 959, 111 S.Ct. 1580, 113 L.Ed.2d 645 (1991) (allowing each side a total block of hours for direct and cross-examination). *See also, Deus v. Allstate Insurance Co.,* 15 F.3d 506 (5th Cir.), *cert. denied,* 513 U.S. 1014, 115 S.Ct. 573, 130 L.Ed.2d 490 (1994) (upholding district court's imposition of 3–day limit for each party to present its case); *Secretary of Labor v. DeSisto,* 929 F.2d 789, 795 (1st Cir.1991) ("[t]his court finds nothing at all to criticize in a district court's effort to eliminate needless time-wasting[.]"); *United States v. Hildebrand,* 928 F.Supp. 841, 844 (N.D.Iowa, 1996) (" ... district judges have broad discretion in managing their dockets, including trial procedure and the conduct or pace of trials.").

Perhaps the most thorough discussion to date (and one of the most commonly cited) on the concept of time limits at trial was Judge Bertelsman's opinion in *United States v. Reaves.* Judge Bertelsman noted that Judge Leval was one of the first district judges to place time limits on a trial in the case of *Westmoreland v. CBS.* Although Judge Leval did not publish a trial scheduling order setting forth his reasons for imposing time limits in that famous libel action, Judge Bertelsman did quote a passage from *Litigation,* 7

(1985), wherein Judge Leval was quoted as follows:

> I have been asked whether I am confident of the lawfulness of such a limitation on trial. I know of no authority to the contrary and can see no reason why such an order should be struck down if the time allotments are reasonable. It is a common practice in the appeals courts to limit the number of pages of briefs, as well as the time for argument. Court time is a valuable and limited resource, and as the volume of litigation grows, the ability of the courts to render service to the public is increasingly threatened. I would think it most shortsighted to prohibit courts from imposing reasonable limitations on the duration of trials. On the other had, an unreasonable limitation might well be found to be an abuse of discretion.

*Reaves,* 636 F.Supp. at 1577–78. Judge Leval's words were somewhat prophetic, given the many courts that have written approvingly of time limits since 1985. In his opinion, Judge Bertelsman discusses the basis for his theory that district courts have the inherent power to impose time limits in trials, which includes not only the court's ability to keep out even certain relevant evidence pursuant to Fed.R.Evid. 403, but also the commands of Fed.R.Evid. 611. Rule 611 states, in relevant part:

> The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

Fed.R.Evid. 611(a). Judge Bertelsman argued that these rules provide the rationale by which court's can impose time limits on trials. He then went on to discuss several policy reasons why such limits may be warranted. "Modern courts recognize that the court's time is 'a public commodity which should not be squandered.' ... There is an unnamed party in every lawsuit—the public. Public resources are squandered if judicial proceedings are allowed to proliferate beyond reasonable bounds. The public's right

to a 'just, speedy, and inexpensive determination of every action' is infringed, if a court allows a case, civil or criminal, to preempt more than its reasonable share of the court's time." *Reaves*, 636 F.Supp. at 1578 (quoting D. Louisell and C. Mueller, 2 Federal Evidence § 128 (1985) and Fed.R.Civ.P. 1).[2] Judge Bertelsman went on to explain as follows:

> A court cannot rely on the attorneys to keep expenditures of time in trying cases within reasonable bounds. The perspectives of the court and the attorneys in trying a case differ markedly. A judge wants to reach a just result in the case and to do so expeditiously and economically. An attorney's primary concern is to WIN the case. If he believes he can win that case by proliferating the evidence of the favorable, but relatively uncontested matters so that the weaker aspects of the case will be camouflaged, it is asking too much of our fallen nature to expect him voluntarily to do otherwise.
>
> Somehow the unfortunate trend has arisen among attorneys to make almost every case a BIG CASE. There is a tendency to want to present the evidence not once, but many times over, and to adduce needlessly cumulative evidence not only on the controverted issues but also on those that are all but uncontested. Advocates tend to confuse quantity of evidence with probative value. Nothing lulls an attorney to the passage of time like the sound of his or her own voice. Few attorneys can tell you what time it is without describing how the clock was made.
>
> Traditionally, judges—most of whom like this writer have been practicing attorneys themselves—have felt that the court should not interfere with an attorney's right to present a case however he saw fit. Indeed, I know of no judge who would not like to let the attorneys have as much time as they think they need to present their case. But the days when courts could afford that luxury have passed.

*Id.* at 1578–79. Finally, it is important to note that time limits may not only conserve judicial resources and promote judicial economy, they may also serve to benefit greatly the litigants themselves. This is because the imposition of time limits " 'requires counsel to exercise a discipline of economy choosing between what is important and what is less so. It reduces the incidence of the judge interfering in strategic decisions. It gives a cleaner, crisper, better-tried case. It gives a much lower cost to the clients.' " *Id.* at 1580 (quoting Judge Leval, *Litigation*, 7, *supra* ).

Most of the cases in which time limits were imposed involved complex, multi-party lawsuits. As stated previously, time limits are generally not imposed in most cases since they are rarely necessary. This court's docket includes a very high percentage of employment discrimination cases. Very rarely does a trial in a sex, age, race, or disability discrimination case in this court last more than two or three days. And the present bad faith action is no more complex than an employment discrimination case. This case only appears complex because the parties have made it so by fiercely litigating the most inconsequential matters.[3] And issues that are important, such as the cause and origin of the fire, have been the subject of numerous discovery disputes and various attempts by both sides to exclude certain witnesses and evidence. It seems obvious that both sides wish to present several witnesses to testify regarding the cause of the fire and the subsequent investigations. It also appears obvious that much of the expert testimony discussed in the various briefs

---

**2.** In *Dominguez v. Figel*, 626 F.Supp. 368, 374 (N.D.Ind.1986), this court noted that in 1985, a single hour spent by a federal judge on a case cost the taxpayers $600.00 (citing Levin & Colliers, Containing the Cost of Litigation, 37 Rutg. L.Rev. 219, 227 (1985)). In a 1995 opinion, the court calculated that the hourly cost had increased to $836.00 by 1994. *Active Products Corporation v. A.H. Choitz & Co. Inc.*, 163 F.R.D. 274, 278 n. 5 (N.D.Ind.1995). It is likely that that cost now, adjusted for inflation, is more in the neighborhood of $900.00 per hour. It is

staggering to think how much taxpayer money has been expended in this case to date. This disservice to the public, in terms of time and money, must not be allowed to continue through trial.

**3.** In one of the motions for partial summary judgment filed by Auto–Owners, the parties even debate the proper standard of review to be employed on summary judgment. This is just one minor example of how this case has been over-litigated.

would be cumulative. That is just one reason why time limits would serve to streamline the trial of this lawsuit. Aside from ruling on the motions in limine, the court has no intention of sorting through the witnesses and evidence to decide what will be presented. That, of course, is up to the parties, who are best suited to decide "between what is important and what is less so."

For all of the reasons discussed above, the court hereby Orders as follows:

1. The total time that will be allotted for the trial of this case is 30 hours (15 hours per side);[4]

2. The 30-hour time limit will begin to toll upon the commencement of Plaintiff's counsel's opening statement;

3. Recesses, court-initiated bench conferences, or any other court-initiated breaks or interruptions in the trial will not be counted as part of the 30-hour limit;

4. The amount of time taken to argue objections which are overruled by the court will be deducted from the objecting party's allotted time. The time for objections which are sustained by the court will be counted against the proponent of the evidence that is the subject of the objection;

5. Cross-examination of witnesses called by a party will be considered part of that party's case for purposes of computing time. Except for exceptional circumstances, the time allowed for cross-examination of a witness will be limited to the amount of time used for direct examination of that witness; and

6. Should the parties wish to have these time limits reviewed, they should file objections within ten days of the date of this Order. Any such objections must set forth *in great detail* and *with specificity* the reasons for any objections, explaining precisely which witnesses or other evidence that the party wishes to present will preclude that party from complying with these time restraints. Should any objections be filed, the court will address them at the next pre-trial conference in this

case, currently scheduled for April 9, 1998 at 10:30 a.m.

IT IS SO ORDERED.

---

4. As further clarification, it is the court's intention that the trial of this case will begin at 9:00 a.m. on Monday, June 8, 1998, that the evidence will be completed by the end of business on Thursday, June 11, and that the case will be argued to the jury on the morning of Friday, June 12.