**Mahendra D. PATEL and Nila Patel, Plaintiffs,**

v.

**UNITED FIRE & CASUALTY COMPANY and Commercial Union Midwest Insurance Company, Defendants.**

No. 1:98:CV–0323.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Jan. 25, 2000.

**950**

John F. Lyons, Barrett and McNagny, Fort Wayne, IN, for John F. Lyons, mediator.

Jack E. Roebel, Roebel and Associates, Fort Wayne, IN, Leonard E. Eilbacher, Eilbacher Scott Inc., Fort Wayne, IN for Mahendra D. Patel, plaintiff.

Robert T. Keen, Jr., Calvert S. Miller, Miller Carson Boxberger and Murphy, Fort Wayne, IN, for United Fire & Casualty Company, defendant.

John S. Beeman, Jeffrey R. Oberlies, Leeuw and Doyle, Indianapolis, IN, Patricia J. Pikel, Swift & Finlayson, Fort Wayne, IN, for Commercial Union Midwest Insurance Company, defendant.

## MEMORANDUM OF DECISION AND ORDER

WILLIAM C. LEE, Chief Judge.

After their restaurant was destroyed in a fire, Plaintiffs, Mahendra D. Patel and Nila Patel ("the Patels") claimed insurance coverage through the two defendants, United Fire and Casualty Company ("United Fire") and Commercial Union Midwest Insurance Company ("Commercial Union"). When coverage was denied from both sources, the Patels brought this diversity action alleging that United Fire and Commercial Union had each breached their insurance contracts and denied them coverage in bad faith. On August 16, 1999, Commercial Union was dismissed from this case and United Fire remains as the sole defendant.

Before the Court are numerous motions including United Fire's Motions for Partial Summary Judgment, filed on September 1, 1999 and October 15, 1999; Plaintiffs' Motion to Reconsider this court's August 27, 1999 Order; and Plaintiffs' Motion to Certify Questions of State Law, both filed on September 13, 1999. These motions, for the most part, relate to the Patels' claims for emotional damages, consequential damages (such as lost profits), and attorney's fees resulting from United Fire's conduct. In addition to these motions, on January 3, 2000, United Fire filed Motion to Strike portions of the Affidavit of Mahendra Patel. Following this barrage of motions, this court held a status conference on January 12, 2000 and directed United Fire to file a motion in limine, to the extent that it asserted Patel was not a competent witness to testify about his own lost profit damages Given this instruction, the court informed the parties that it would enter an order on all pending motions save United Fire's Motion for Partial Summary Judgment relating to lost profits. This order addresses those pending motions.

For the reasons that follow, the Court will DENY the Patels' Motion for Reconsideration; DENY the Patels' Motion to Certify Questions of State Law; DENY United Fire's Motion for Partial Summary Judgment relating to emotional damages, and DENY United Fire's Motion for Partial Summary Judgment relating to attorney fees. The Court shall hold under advisement United Fire's Motion for Partial Summary Judgment relating to lost profits and United Fire's Motion to Strike the Affidavit of Mahendra Patel.

### *FACTUAL BACKGROUND*

Given that the parties agree that the issues before the court are purely legal ones, only minimal background facts are necessary. The Patels are joint owners of a commercial building utilized as a motel and restaurant in Fort Wayne, Indiana.[1]

---

1. As part of their business enterprise, the Patels had leased their building to Steinhaus, an Indiana corporation which planned to utilize the building.

In the early morning of September 29, 1997, the Patels' restaurant was destroyed by fire, indisputably the result of arson. At the time of the fire, the Patels were the named insureds on a policy issued by United Fire, insuring their motel and restaurant against loss by fire. Additionally, the tenant/operator of the restaurant/motel (Steinhaus) also carried insurance on the premises through its casualty insurance carrier, Commercial Union. After an investigation by the two insurance carriers spanning the course of a year, United Fire notified Mr. Patel, via letter, that it was denying his claim because it believed he (and presumably Mrs. Patel) had intentionally set the restaurant ablaze in violation of the fraud and arson provisions of their policy. United Fire offered the Patels no factual basis for this conclusion.

Subsequently, the Patels initiated the present action wherein they sued United Fire for breach of contract and for breach of its duty of good faith and fair dealing. While this action was pending, the Fort Wayne Police Department arrested an individual on an unrelated arson charge. While in custody, this individual promptly confessed to setting the fire that destroyed the Patels' restaurant. Thereafter, in June 1999, United paid plaintiffs' claim for losses covered under the policy along with interest but refused to pay any consequential damages attributable to the delay in paying the claim or any damages for alleged bad faith.

In this lawsuit, the Patels seek damages for breach of the insurance contract, and for United Fire's alleged bad faith, including consequential damages, emotional damages, punitive damages, and attorney's fees.

### APPLICABLE STANDARD

This court has previously articulated to the parties in this case the appropriate standard to be applied on summary judgment and need not enlarge this opinion further by reiterating it herein. *See Court's August 27, 1999 Order*, pp. 2–3. Cognizant of these standards and recognizing that summary judgment is only appropriate by the very terms of Rule 56(c) where there exists "no genuine issue as to any material facts and ... the moving party is entitled to judgment as a matter of law," the Court now turns to arguments advanced by the parties in the pending motions.

### DISCUSSION[2]

More than seven years ago, the Indiana Supreme Court, in *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 520 (Ind.1993), recognized the special relationship between an insurer and the insured and the right of an insured to bring suit, in tort, against an insurer for breach of its duty to act in good faith and deal fairly with an insured. Since the Indiana Supreme Court's decision in *Erie*, much has been written about the conduct which leads to an insurer's liability for breach of this duty. *See Firstmark Standard Life Insurance Company v. Goss*, 699 N.E.2d 689 (Ind.App.1998); *Colley v. Indiana Farmers Mutual Insur-*

---

**2.** The court begins its discussion cognizant that under the doctrine espoused in *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, a federal court sitting in a diversity action is bound to apply the substantive law of the state which provides the rule of decision in addressing plaintiffs' claims. In this case, the court must predict how the matter before it would be resolved by the highest court in Indiana. *Mason v. Ashland Exploration, Inc.*, 965 F.2d 1421, 1424 (7th Cir.1992); *Koval v. Simon–Telelect, Inc.*, 979 F.Supp. 1222, 1231 (N.D.Ind.1997). "[I]ntermediate appellate court decisions are ... a strong indication of what the state's high court

would do." *Burleson v. Illinois Farmers Insurance Company*, 725 F.Supp. 1489, 1491 n. 2 (S.D.Ind.1989), citing *Williams, McCarthy, Kinley, Rudy & Picha v. Northwestern Nat. Insurance*, 750 F.2d 619 (7th Cir.1984); *Heinhold v. Bishop Motor Exp., Inc.*, 660 F.Supp. 382 (N.D.Ind.1987). However, in making a determination of how a case would be decided by the Indiana Supreme Court, federal district courts are not bound by the decisions of the Indiana Court of Appeals. *Rayford v. Lumbermens Mutual Casualty Company*, 851 F.Supp. 1247, 1249 (N.D.Ind.1994); *Robinson v. Ada S. McKinley Community Services, Inc.*, 19 F.3d 359, 363 (7th Cir.1994).

*ance Group,* 691 N.E.2d 1259 (Ind.App. 1998); *Johnston v. State Farm Mutual Auto. Ins.,* 667 N.E.2d 802 (Ind.App.1996). Indeed, this court has had recent occasion to examine the subject extensively. *See Enright v. Auto–Owners Ins. Co.,* 2 F.Supp.2d 1072 (N.D.Ind.1998); *United Capitol Ins. Co. v. Special Trucks, Inc.,* 918 F.Supp. 1250 (N.D.Ind.1996).[3] The issues before the court in the present case, however, do not involve whether United Fire's conduct is a breach of the duty, as this will be determined by the trier of fact. Rather, the issues presented are purely damage questions and, for purposes of these motions, the parties assume liability on the part of the insurer.

Before analyzing the particular damages sought by the plaintiffs here, the court acknowledges that both the Indiana Supreme Court, and at least one Indiana appellate panel, have expressly refused to consider the issue of what damages a plaintiff in a bad-faith insurance claim is entitled, *see Erie,* 622 N.E.2d at 519 ("Neither do we need to decide the precise nature and extent of damages recoverable in such an action."); *Goss,* 699 N.E.2d at 696 ("... [L]ike our supreme court in *Erie,* we leave for another day the determination of the precise nature and extent of damages recoverable in such an action."), and thus this court is left with a relatively uncharted sea within which to decide the question posed today.[4]

After the pronouncement in *Erie Insurance,* an insured who believes an insurance claim has been wrongly denied has two distinct legal theories available, one for breach of the insurance contract and one in tort for breach of the duty of good faith and fair dealing. *Erie Ins. Co. v. Hickman,* 622 N.E.2d 515, 520 (Ind.1993). In this case, the Patels invoked both and seek the following damages:

1.   ... damages in the nature of loss of rents from the restaurant building which was destroyed in the subject fire, for that period of delay in the payment of the coverages, but not including the period of reconstruction of the restaurant.

2.   ... loss of rental income from [Plaintiffs'] motel operation, which can be proved to have been directly caused by the *delay* in reconstruction of the motel.   For example, plaintiffs had an agreement with the Norfolk & Western Railroad to house their transient train crews, which amounted to 8–10 rooms per night.   Norfolk & Western terminated the arrangement, when the on-premises restaurant was lost by fire. Plaintiffs have been unable to restore the restaurant and the former arrangement because of the delay in the settlement of the insurance claim.

3.   ... damages for the unavailability of a restaurant during the "delay" period for deprivation of the opportunity sell [sic] the motel and restaurant. At the time of the fire there were ongoing negotiations for sale of the motel and the restaurant.   The loss of interest income on the profit in such a sale is readily calculable.

4.   ... compensatory damages for emotional and physical stress as a result of the tortious bad-faith adjusting practices of United, including having been accused of being felons in the written denial of their fire claim, and the deprivation of the insurance proceeds.

5.   ... attorneys fees

On August 27, 1999, this court, in ruling on United Fire's [First] Motion for Partial

---

**3.** *United Capitol* began as a declaratory judgment action which later spawned a second lawsuit by the insured alleging that the insurer litigated the declaratory judgment action in bad faith and breached its duty to act in good faith.

**4.** It is for this very reason that plaintiffs filed their motion to certify questions of Indiana state law to the Indiana Supreme Court pursuant to Ind.App.R. 15(O), discussed *infra.*

Summary Judgment, denied the Patels the right to recover items # 1 through # 3 on their breach of contract claim but left open the possibility that such items would be recoverable at trial on their claim for breach of the insurer's duty of good faith and fair dealing. *See August 27, 1999 Order, pp. 9–12.* Plaintiffs now request reconsideration of that order and certification of that question to the Indiana Supreme Court pursuant to Ind.App.R. 15(O).[5] United Fire's motions assert that the Patels cannot recover emotional damages, consequential damages, or attorney's fees even if they succeed on their bad faith claim. The court shall first address the plaintiffs' motions, followed by the remaining two motions for partial summary judgment.

### 1. *Plaintiffs' Motion to Reconsider and/or Certify Questions of State Law*

■ "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.,* 90 F.3d 1264, 1269 (7th Cir. 1996) (citing *In Re Oil Spill,* 794 F.Supp. 261, 267 (N.D.Ill.1992)). Indeed, the Seventh Circuit has, in no uncertain terms, described a motion to reconsider as frivolous if it contains no new evidence or arguments of law explaining why the judge should change the original order. *See Magnus Electronics, Inc. v. Masco Corp. of Indiana,* 871 F.2d 626, 629 (7th Cir. 1989) (A motion to reconsider is frivolous if it contains no new evidence or arguments of law that explain why the [Judge] should change an original order that was proper when made); *Cf. Unioil, Inc. v. E.F. Hut-*

*ton & Co.,* 809 F.2d 548, 559 (9th Cir.1986), cert. denied, 484 U.S. 822, 108 S.Ct. 83, 98 L.Ed.2d 45 (1987) (motion to reconsider with no new evidence is frivolous if district judge previously held that old evidence was insufficient); *Brown v. National Bd. of Medical Examiners,* 800 F.2d 168, 173 (7th Cir.1986) (motion to reconsider sanctions that merely reproduces the original motion to produce violates Rule 11).

Although plaintiffs styled their motion as one for "reconsideration," they have presented no new evidence or legal arguments explaining why this court should reconsider its prior order relating to their entitlement to consequential damages. Instead, what plaintiffs now suggest is that this court take under advisement their motion to reconsider and certify the issue of their entitlement to consequential damages (for the breach of contract action) and emotional damages (if there is a bad faith finding) to the Indiana Supreme Court.[6] This court shall do neither.

■ In litigation, expediency must often yield to the rule of law and so it is with the issue of certification here. Utilizing the certification procedure in this case would, no doubt, be both useful and ideal to achieve finality for the parties, avoid a subsequent appeal to the Seventh Circuit, and avert the possibility that this court will wrongly predict the will of the Indiana Supreme Court. Indeed, "[c]ertification is an alternative to prognostication." *Todd v. Societe BIC, S.A.,* 9 F.3d 1216, 1222 (7th Cir.1993). Certification in this case also comports with the public good in that receiving definitive answers on these issues, likely to recur with some frequency in bad faith cases, would prevent future litigation on these same matters and provide great

**5.** Ind.App.R. 15(O) provides:

When it shall appear to ... any United States District sitting in Indiana that there are involved in any proceeding before it questions or propositions of the laws of this state, which are determinative of the said cause, and there are no clear controlling precedents in the decisions of the Supreme Court of this state, such federal court may certify such questions or propositions of the

laws of this state to the Supreme Court of this state for instructions concerning such questions or propositions of state law which certificate the Supreme Court of this state, by written opinion, may answer.

**6.** Plaintiffs also request the court to certify the question of whether they are entitled to attorneys fees if they prove bad faith. ·

precedential value to Indiana litigants. *See Diginet, Inc. v. Western Union ATS, Inc.,* 958 F.2d 1388, 1395 (7th Cir.1992) (holding that "fact-laden and particularistic" questions are unsuitable for certification since they are unlikely to recur and "lack broad, general significance"). Unfortunately, the damage questions presented here do not meet the standards set out in Indiana's certification procedure and thus, this court must refrain from certifying them.

Under Indiana's certification procedure codified in Ind.App.R. 15(O), this court may only certify questions of law where there is no controlling Indiana Supreme Court precedent and the resolution of the question would be "determinative of the said cause." Ind.App.R. 15(O). Indiana's rule and its "determinative of the said cause" language, is derived from the Uniform Certification of Questions of Law Act of 1967 (the "Uniform Act"), adopted by Indiana in 1971.[7] While Indiana's Supreme Court has not expressly clarified the meaning of the phrase "determinative of the cause," both Indiana cases and the Seventh Circuit interpret it to mean dispositive of the case as a whole. *See In re Sandy Ridge Oil Co., Inc.,* 510 N.E.2d 667, 668 (Ind.1987) ("This cause comes to us as a certified question ... pursuant to Appellate Rule 15(O) which allows certification

of a question of Indiana law to this Court when the question is *determinative of the case* and there is no clear controlling Indiana Supreme Court precedent."); *Shirley v. Russell,* 69 F.3d 839, 844 (7th Cir.1995) ("Certification is appropriate only when the question of state law will control the outcome of the case."); *Brownsburg Area Patrons Affecting Change v. Baldwin,* 137 F.3d 503, 509 (7th Cir.1998) ("Moreover, an interpretation of the statute by Indiana's highest court will be outcome determinative."); *LTV Steel Co., Inc. v. Northwest Engineering & Const., Inc.,* 41 F.3d 332, 338 (7th Cir.1994) ("Even if the Indiana Supreme Court were to answer LTV's proposed question, it would not be dispositive in this case ..."); see also *White v. Edgar,* 320 A.2d 668, 677 (Me.1974) (" 'Determinative of the cause' is more inclusive than 'determinative of the federal merits of the cause.' It encompasses *any* disposition by which the federal cause is *terminated,* thus to be 'determined.' ").[8]

Plaintiffs concede that none of the damage questions at issue are potentially dispositive of the entire case. However, the Patels do raise the point that absent the ability to seek consequential damages for breach of contract they have no damages to support a breach of contract claim and

---

**7.** In 1995, the Uniform Act of 1967 was revised to read:

The [Supreme Court] of this State may answer a question of law certified to it by a court of the United States ... if the answer may be *determinative of an issue in pending litigation in the certifying court* and there is no controlling appellate decision, constitutional provision, or statute of this State. Despite this broadening revision, Indiana has not adopted the amended Uniform Act. In fact, a current proposal to revise Ind.App.R. 15(O) and recodify it as Ind.App.R. 64 makes it more clear that Indiana requires a certified question to be "determinative of the case." *See Proposed Ind.R.App.P. 64* ("[Any federal court] may certify a question of Indiana law to the Supreme Court when it appears to the federal court that a proceeding presents an issue of state law that is determinative of the case and on which there is no clear controlling Indiana precedent.")

**8.** This appears to be what the drafters of the Uniform Law intended when it originally drafted the language "determinative of the cause." *See American Law Institute, Study of the Division of Jurisdiction between State and Federal Courts,* Official Draft 1969, p. 269 (If a state "should decide that it can answer certified questions only if any answer it gives will end the case, then the certifying judge will understand this and will not certify questions in cases that are not in such a posture."). Under certain circumstances, however, the final opinion of the Indiana Supreme Court on a certified question may not, in effect, dispose of an entire case. Indeed, it is entirely possible that even with an answer from the Indiana Supreme Court, further and extensive proceedings; including even a trial, will be necessary.

thus, the issue of consequential damages is effectively dispositive of that particular claim. As a result, they urge this court to certify, at a minimum, that question.

■ Perhaps this argument would have carried more persuasive force had it been made prior to this court's ruling on the issue of consequential damages. Certification is disfavored where the court has previously decided the issue or has already tried the case. *See Perkins v. Clark Equipment Co.*, 823 F.2d 207, 210 (8th Cir.1987) ("Once a question is submitted for decision in the district court, the parties should be bound by the outcome unless other grounds for reversal are present. Only in limited circumstances should certification be granted after a case has been decided."). Moreover, even accepting the Patels' argument that this court's prior ruling forecloses their contract claim, the court remains confined by the rule's language, which anticipates, at the very least, that the question be potentially dispositive of the case.[9]

In concluding the discussion of this issue, the court is mindful of the body of authorities relating to certification which hold that, "[T]he court should be slow to honor a request for certification from a party who chose to invoke federal jurisdiction." *Jefferson v. Lead Industries Ass'n, Inc.*, 106 F.3d 1245, 1248 (5th Cir.1997); *See also Schmitt v. American Family Mut. Ins. Co.*, 161 F.3d 1115, 1117 (7th Cir.1998); *Tidler v. Eli Lilly & Co.*, 851 F.2d 418, 426 (D.C.Cir.1988); *National Bank v. Pearson*, 863 F.2d 322, 327 (4th Cir.1988); *Seaboard Sur. Co. v. Garrison, Webb & Stanaland, P.A.*, 823 F.2d 434, 438 (11th Cir.1987); *Colonial Park Country Club v. Joan of Arc*, 746 F.2d 1425, 1429 (10th Cir.1984); *Cantwell v. University of Mass.*, 551 F.2d 879, 880 (1st Cir.1977); *Santiago v. Sherwin Williams Co.*, 3 F.3d 546, 548 (1st Cir.1993) ("For reasons that are largely self-explanatory, we have held

that 'one who chooses to litigate [her] state action in the federal forum (as plaintiff did here) must ordinarily accept the federal court's reasonable interpretation of extant state law rather than seeking extensions via the certification process.' "). Indeed, in *Jefferson*, the Fifth Circuit recently declined certifying questions of state law, in part because the party requesting certification was the very party who had chosen the federal forum:

> Although not alone dispositive, Jefferson's choice of forum cannot be ignored. By filing suit in federal court, Jefferson consciously exercised her option to litigate in either state or federal court when she chose the latter. That her electing to file in federal court might have been done in anticipation of removal by the defendants is of no moment: '[T]he court should be slow to honor a request for certification from a party who chose to invoke federal jurisdiction.'

*Id.* Here, while not the sole factor considered by this court, the Patels invoked this court's diversity jurisdiction and, in so doing consciously chose to accept this court's interpretation of Indiana law. For them to now attempt to annul that choice of forum because the federal court's interpretation is not to their liking does not comport with the spirit of the certification rule.

This court does not lightly abdicate its mandate to decide issues of state law when sitting in diversity, but in the same vein cases are not to be routinely certified merely because the certification procedure is available. This court agrees with the Fifth Circuit's recent statement that:

> As a general proposition we are chary about certifying questions of law, absent a compelling reason to do so; the availability of certification is such an important resource to this court that we will not risk its continued availability by going to that well too often.

---

9. Given the fact that the other damage questions are not determinative of any claim, let alone the "cause," it makes little sense, even assuming this court could certify the conse-

quential damages issue, to certify that question and not the remaining questions, all of which are equally unsettled questions in Indiana.

*Jefferson,* 106 F.3d at 1247; *see also Boyter v. C.I.R. Service,* 668 F.2d 1382, 1385 n. 5 (4th Cir.1981) ("Federal courts should take care not to burden their state counterparts with unnecessary certification requests."); *Barnes v. Atlantic & Pacific Life Ins. Co.,* 514 F.2d 704, 705 n. 4 (advocating much judgment, restraint and discretion in certifying questions). This court shall not approach that well as a matter of course, nor shall it press certification when the certification requirements are not met. Accordingly, both the Plaintiffs' Motion to Certify and the Plaintiffs' Motion to Reconsider are DENIED.

### 2. United Fire's Motion for Partial Summary Judgment Relating to Emotional Damages

With the certification issue laid to rest, the court turns now to the substance of United Fire's motions for summary judgment. In its second partial summary judgment motion, United Fire seeks a determination that the Patels are not entitled to recover emotional damages as part of their bad faith tort claim, as a matter of law. As noted, *Erie Insurance Co. v. Hickman* expressly declined to identify the damages recoverable in a bad faith action and provided only the following guidance with respect to the scope of damages for such a cause of action:

Neither do we need to decide the precise nature and extent of damages recoverable in such an action. In tort, all damages directly traceable to the wrong and arising without an intervening agency are recoverable. By contrast, the measure of damages in a contract action is limited to those actually suffered as a result of the breach which are reasonably assumed to have been within the contemplation of the parties at the time the contract was formed. Nonetheless, in most instances, tort damages for the breach of the duty to exercise good faith will likely be coterminous with those recoverable in a breach of contract action.

*Erie,* 622 N.E.2d at 519. It is from the concluding sentence of this paragraph that United Fire adopts its position that the

Patels may not recover emotional damages because such damages are ordinarily not recoverable in a breach of contract action. See United Fire's Reply, p. 5. United Fire also advances three other theories: first, under Indiana law the Patels may not recover emotional damages without first showing a physical injury (i.e., the "impact rule"); second, the intentional tort exception to the impact rule does not apply; and third, even if the intentional tort exception does apply, Indiana case law relating to bad faith does not contemplate the recovery of emotional damages. In response, the Patels assert that they are entitled to recover all damages directly traceable to their tort action including emotional damages and that the intentional tort exception to the impact rule permits them to recover emotional damages under Indiana law. The court shall address each of these arguments in turn.

### a. Indiana's "Impact Rule" and the Intentional Tort Exception

Indiana adheres to the traditional "impact rule" for emotional damages. This rule gained its title from "the requirement that there be some physical impact on the plaintiff before recovery for mental trauma will be allowed." *Shuamber v. Henderson,* 579 N.E.2d 452, 454 (Ind.1991). Indeed, under this rule damages for emotional distress may only be recovered by a plaintiff when the emotional injury was accompanied by a physical impact to the plaintiff. Recently, in *Conder v. Wood,* 716 N.E.2d 432, 434 (Ind.1999), the Indiana Supreme Court recited in detail the nature of the rule:

Indiana had long maintained a rule that damages for emotional distress injury could only be recovered when the injury was accompanied by a physical impact to the plaintiff. Historically referred to as the "impact rule," it required proof of three elements: (1) an impact on the plaintiff; (2) which caused physical injury to the plaintiff; (3) which physical injury, in turn, caused the emotional distress. Put another way, the rule man-

dated that damages for emotional distress were recoverable only when the distress was accompanied by, and resulted from, a physical injury caused by an impact to the person seeking recovery. Actionable emotional distress had to be the natural and direct result of the plaintiff's physical injury.

*Id.* (internal citations omitted).

■ Although this "impact rule" remains the general rule in Indiana, the Indiana Supreme Court in *Shuamber* created a "modified impact rule" which reformulated the impact rule to permit the recovery of emotional distress damages if "a plaintiff sustains a direct impact by the negligence of another and, by virtue of that direct involvement sustains an emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person ... without regard to whether the emotional trauma arises out of or accompanies any physical injury to the plaintiff." *Shuamber*, 579 N.E.2d at 456.[10] Thus, *Shuamber* requires that a plaintiff show that he or she has sustained a "direct impact by the negligence of another" and that he or she has suffered emotional trauma "by virtue of that direct involvement." See *Groves v. Taylor*, 711 N.E.2d 861, 864 (Ind.App. 1999); *Conder*, 716 N.E.2d at 434.

■ In addition to creating the "modified impact rule," the *Shuamber* court also reconfirmed the exception to the impact rule for intentional torts first set forth in *Cullison v. Medley*, 570 N.E.2d 27 (Ind. 1991), stating, "Indiana courts have recognized an exception to operation of the impact rule in cases where the defendant's conduct was 'inspired by fraud, malice or like motives involving intentional con-

duct.' " *Shuamber*, 579 N.E.2d at 454. Under this body of law, recovery for emotional distress may be had in the absence of a physical injury in the case of an intentional tort which would foreseeably provoke an emotional disturbance of the kind normally to be aroused in the mind of a reasonable person. *Shuamber*, 579 N.E.2d at 454–55; see also *Etienne v. Caputi*, 679 N.E.2d 922 (Ind.App.1997); *Groves*, 711 N.E.2d at 863, n. 1. It is this holding which the Patels contend is controlling with respect to emotional damages in this case.

### 2. Application of the Impact Rule and Intentional Tort Exception

The Patels do not dispute the existence or the theory of the impact rule and the modified impact rule. Rather, the Patels assert that the tort of bad faith is an intentional tort and thus, the impact rule is inapplicable to this case. The Patels' argument on this score is not a novel one. In *Firstmark Standard Life Insurance Company v. Goss*, 699 N.E.2d 689 (Ind. App.1998), the plaintiff asserted that she was entitled to recover emotional damages on her bad faith claim because her emotional distress was a byproduct of her insurer's breach of its duty of good faith. The Indiana Appellate court explained her argument in this fashion, "[Goss asserts that] by breaching its duty of good faith to [her], Firstmark committed an intentional tort which would foreseeably provoke an emotional disturbance of the kind normally to be aroused in the mind of a reasonable person." Although Goss made this argument, the court did not have occasion to reach the question of whether emotional damages are available in a bad faith action

---

**10.** In *Shuamber,* a mother and daughter were involved in an automobile accident in which a younger family member died. Both mother and daughter sustained various physical injuries, but did not seek recovery for emotional trauma arising out of their own physical injuries. Instead, they sought recovery for emotional trauma caused by witnessing the death of a younger family member. As such, the Shuambers were precluded from recovery un-

der the impact rule then in effect. After analyzing the policies supporting the impact rule, the Court concluded that there was "no reason under appropriate circumstances to refrain from extending recovery [to a plaintiff] for emotional distress to instances where the distress is the result of physical injury negligently inflicted on another." *Shuamber,* 579 N.E.2d at 455.

because it concluded as a matter of law that the insurer was not liable for the tort. In explaining this, the court concluded, "Without proving Firstmark violated its duty of good faith, i.e., committed the tort, there is no basis for an award of any damages based upon the tort. Accordingly, like our supreme court in *Erie*, we leave for another day the determination of the precise nature and extent of damages recoverable in such an action." *Id.* at 692. Thus, although the argument has been raised before, this court is the first to determine whether it wins the day.

In rebutting the Patels' assertions, United Fire argues that the concept of bad faith is "unintentional" and thus the unintentional actions of an insurer can permit a finding of bad faith. *See* United Fire's Reply, p. 4. United Fire goes on to note that the intentional tort exception to the impact rule, as reconfirmed by *Shuamber,* is only applicable to actions "inspired by fraud, malice or like motives involving intentional conduct," *Shuamber,* 579 N.E.2d at 454, and "[s]uch ill inspired conduct is not a prerequisite to a bad faith claim." United Fire's Reply, p. 4.

■ Neither party cites to any Indiana authority which holds that the tort of bad faith is an intentional tort. Perhaps this is because the tort of bad faith, as defined in Indiana, is a hybrid cause of action, sharing elements of both a negligence action and one for an intentional tort. From its initial articulation by the Indiana Supreme Court, the tort of bad faith breach of an insurance contract has been characterized by willful, and conceivably even intentional, conduct. Bad faith conduct by an insurer has been described by Indiana courts as more than "poor judgment or negligence" but requires conduct that is evidenced by a "state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will." *Colley v. Indiana Farmers Mut. Ins. Group,* 691 N.E.2d 1259 (Ind.App.1998); *see also Johnston v. State Farm Mut. Auto. Ins.,* 667 N.E.2d 802, 805 (Ind.Ct.App.1996) (requiring an element of conscious wrongdo-

ing to be present). At the same time, however, insurers are not liable for bad faith if they act "reasonably" in denying coverage or pressing an argument against coverage. *See Colley,* 691 N.E.2d at 1261 (insurer not liable if it denies liability having a rational, principled basis to do so). This principle of reasonableness sounds in negligence and seemingly embodies negligence principles.

■ While the bad faith cause of action may commingle the notions of negligence and intentional torts, this court believes, after close examination, that the Indiana Supreme Court would consider the tort more closely aligned with the principles underlying an intentional tort than with those ascribed to negligence.

Under Indiana law, a person may be found to have exhibited the necessary intent for an intentional tort through one of two ways. Under the first method, a plaintiff must show that the tortfeasor acted with a "specific intent," that is where the tortfeasor does something which brings about the exact result desired. Under the second method, the tortfeasor does something which he believes is substantially certain to cause a particular result, even if the tortfeasor does not desire that result. *See Shewmaker v. Etter,* 693 N.E.2d 608 (Ind.App.1998). As noted previously, Indiana courts require a jury to find that the insurer acted with a state of mind evidencing conscious wrongdoing before it may conclude that an insurer has breached its duty to act in good faith. *See Johnston,* 667 N.E.2d at 805. Such a finding is akin to the insurer having a specific intent to injure the insured and thus, consciously acting with such a purpose. Therefore, this court holds that the tort of bad faith breach of an insurance contract is an intentional tort under Indiana law. The court further concludes that an insured may recover emotional damages under the intentional tort exception to Indiana's impact rule where the insured has proven bad faith conduct by the insurer.

Support for this conclusion is gleaned from the Indiana Supreme Court's decision in *Erie*. The *Erie* court clarified that a cause of action for bad faith breach of an insurance contract was developed to fill a void in the remedies provided to an insured arising from that conduct. *See Erie*, 622 N.E.2d at 519 (noting that one of the primary factors the court considered was the "return to the rule of no punitive damages in contract cases ...")... Traditionally, contract damages (as this court has already held in this case) were limited to the face value of the insurance policy plus interest. *Erie*, 622 N.E.2d at 519 (contract damages limited to those actually suffered as a result of the breach). Such a rule, although not expressly recognized in *Erie*, created an incentive for insurers to refuse payment of even legitimate claims since at most, the assessed damages would equal the limits of the policy plus interest. The reason for recognizing the new tort was to discourage insurers from such behavior and to provide the insured with some bargaining power against an insurer. More importantly, the goal of *Erie* is to permit plaintiffs in bad faith actions to recover damages beyond those traceable to the contract, including punitive damages. Thus, the *Erie* court expressly stated that in tort, "all damages directly traceable to the wrong and arising without an intervening agency are recoverable." *Erie*, 622 N.E.2d at 519. The wholesale inability of a plaintiff to collect compensatory damages such as emotional damages in a bad faith tort action, as defendant urges, thwarts *Erie's* purpose as well as the public policy behind the Indiana Supreme Court's recognition of the tort.

This court is not alone in either its recognition that the bad faith cause of action is an intentional tort or its conclusion that a finding of bad faith permits an insured to recover all damages, including emotional damages, proximately caused by the in-

sured's conduct. This has long been the law in numerous jurisdictions that have adopted bad faith causes of action.[11] *See generally*, Shernoff, Gage & Levine, INSURANCE BAD FAITH LITIGATION, § 7.04 (Matthew Bender, 1999); Ashley, BAD FAITH ACTIONS LIABILITY AND DAMAGES, § 8.04 (West, 2d Ed.1997); *McCorkle v. Great Atlantic Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981) (liability for the "intentional tort" of bad faith requires a clear showing that the insurer unreasonably, and in bad faith, withheld payment of the claim of its insured); *Chavers v. National Sec. Fire & Cas. Co.*, 405 So.2d 1, 6 (Ala.1981) (recognizing bad faith as an intentional tort and holding that, "[t]he law will not allow an insurer to wilfully refuse to evaluate or honor a claim with the knowledge that the avowed purpose of the insurance contract was to protect the insured at its weakest and most perilous time of need."); *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 271 N.W.2d 368, 374 (1978) (holding that a claim for bad faith is an intentional tort); 145 Wis.2d 573, 427 N.W.2d 427, 432 ("A 'bad faith' cause of action has always been considered an intentional tort"); *Ring v. State Farm Mut. Auto. Ins. Co.*, 147 Ariz. 32, 708 P.2d 457, 462 (App.1985) ("In Arizona, a claim against an insurer for bad faith is an intentional tort."); *Gruenberg v. Aetna Insurance Co.*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973) (permitting emotional distress damages in insurance bad faith case); *Clausen v. National Grange Mut. Ins. Co.*, 730 A.2d 133, 140 (Del.Sup.1997) ("An insurer who acts in bad faith in dealing with a claim may incur liability not only for damages under the policy but for uncovered economic losses of the insured, the insured's emotional distress damages, attorney's fees, and punitive damages."); *Ingalls v. Paul Revere Life Ins. Group*, 561 N.W.2d 273, 283 (N.D.1997) ("Because

---

11. When addressing an unsettled issue of state law, the court may be guided by relevant authority of other jurisdictions that have addressed the issue. *See Erie Ins. Group v. Sear Corp.*, 102 F.3d 889, 892 (7th Cir.1996)

(where unsettled issue of state law arises, federal court may rely on relevant authority from other jurisdictions in determining what state would do if presented with the issue).

a primary consideration in purchasing insurance is the peace of mind and security it will provide, an insured may recover for any emotional distress resulting from an insurer's bad faith."); *Ballow v. PHICO Insurance Co.*, 878 P.2d 672 (Colo.1994) (permitting recovery in bad faith claim based upon traditional tort principles of compensation for injuries actually suffered, including emotional distress.); *Universal Life Ins. Co. v. Veasley*, 610 So.2d 290 (Miss.1992) ("We have traditionally held that damages for mental anguish and emotional distress cannot be considered in the absence of a finding of an independent intentional tort separate from the breach of contract. Bad faith is considered such an independent tort.")

With this said, the court concludes that Indiana's Supreme Court, if presented with the issue, would hold that an insured injured by the bad faith conduct of an insurer, that is conduct which evidences a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will, is entitled to recover damages based upon traditional tort principles of compensation for resultant injuries actually suffered, including emotional distress. Certainly, as the Indiana Supreme Court noted in *Erie*, there will be cases where the damages for breach of contract and the tort damages will coincide or overlap. However, in some instances, as in the present case, the insured's allegations of injury as a result of the insurer's bad faith conduct extend beyond those damages which would be traditionally recoverable in a breach of contract action. When such a case arises, this court believes that Indiana's Supreme Court, in accordance with its decision in *Erie*, would find such damages recoverable, subject to proof (and causation) at trial. This interpretation of Indiana law gives meaning to *Erie's* statement that "an insured who believes that an insurance claim has been wrongly denied may have available two distinct legal theories, one in contract and one in tort, *each with sepa-*

*rate, although often overlapping, elements, defenses and recoveries," Erie*, 622 N.E.2d at 520 (emphasis added), as well as *Erie's* recognition that the tort of bad faith leaves an insurer open to the prospect of punitive damages liability. *Id.* For these reasons, United Fire's motion for partial summary judgment as to emotional damages is hereby DENIED.

### 3. *United Fire's Motion for Partial Summary Judgment Relating to Attorney's Fees*

Indiana follows the "American rule," which requires each party to pay its own attorney's fees, absent an agreement, statute, or rule to the contrary. *See Mitchell v. Mitchell*, 695 N.E.2d 920, 922 (Ind.1998); *Kikkert v. Krumm*, 474 N.E.2d 503, 504–05 (Ind.1985); *Shumate v. Lycan*, 675 N.E.2d 749, 754 (Ind.Ct.App.1997), *trans. denied.* Plaintiffs agree that the general rule in Indiana is the "American rule" but urge this court to hold that (1) an exception to the American Rule applies in bad faith tort cases, or (2) the statutory exception contained in Ind.Code § 34–52–1–1(b)(3) applies. Not surprisingly, defendant disagrees with both these notions, and argues that the plaintiffs are foreclosed from recovering any attorney's fees.[12]

In support of their first contention, i.e. that the Indiana Supreme Court would, if presented with the issue, find an exception to the American Rule where a jury finds bad faith conduct by an insurer, the Patels rely solely on the Indiana Court of Appeals decision in *Mikel v. American Ambassador Cas. Co.*, 644 N.E.2d 168 (Ind.App. 1994).

In *Mikel*, the insured (Mikel) brought a declaratory judgment action against his insurer after he was denied coverage for an automobile accident involving his newly acquired automobile. Although the insurer initially denied coverage, after the insured filed suit, it reconsidered its position

---

**12.** Notably, neither party spends any time on the facts in their argument; rather, the issue they frame is whether the Patels would ever be entitled to attorney's fees on their claims as a matter of law.

and granted coverage. The insurer, however, refused to pay Mikel's attorney's fees for bringing the declaratory judgment action. Mikel asserted that he was entitled to recover attorney's fees under specific language in his insurance policy which provided that the insurer will pay all reasonable expenses "incurred at [the insurer's] request." The trial court disagreed with Mikel and found in favor of the insurer. On appeal, Mikel reasserted his argument that the language of his policy entitled him to attorney's fees.

After a discussion of the American Rule, the Indiana Court of Appeals held that under the plain and ordinary meaning of "request," it was clear that the insurer did not ask Mikel to incur attorney's fees. In addition, the court looked to case law in other jurisdictions and reaffirmed the principle that "insurers should be able to litigate claims in good faith without liability for their insured's attorney's fees." *See Mikel,* 644 N.E.2d at 170, fn. 1 & 171. The court then explained:

> We hold that when the insured brings an action for a declaration of coverage and prevails, absent a bad faith denial of coverage by the insurer, attorney's fees incurred by the insured in the prosecution of the action are not incurred at the 'request' of the insurer. Our holding is consistent with the longstanding rule in Indiana that an insurer may dispute claims in good faith.

*Id.* at 172.

The Patels contend that the above quoted passage from *Mikel* implies "that if bad faith is shown, then attorney fees would be awarded by the Indiana courts." *See* Response, p. 6. Certainly, the *Mikel* court raises an inference that perhaps if Mikel had alleged bad faith, he would have been entitled to attorney's fees had he prevailed on that claim. However, as this court has noted previously, it is bound only by decisions of Indiana's Supreme court. *Mason,* 965 F.2d at 1424. While "intermediate appellate court decisions are ... a strong indication of what the state's high court would do," *Burleson,* 725 F.Supp. at 1491

n. 2, federal district courts are not bound by the decisions of the Indiana Court of Appeals. *Rayford,* 851 F.Supp. at 1249.

In the present case, *Mikel* represents a case where, in *dicta,* an intermediate appellate court creates an inference in favor of the plaintiffs' position that a successful tort action for breach of the insurer's duty of good faith yields an award of attorney's fees. At the same time, however, this opinion reaffirms the general and longstanding principals espoused in Indiana case law that the insurer has an absolute right to dispute and litigate claims in good faith, *see Vernon Fire & Casualty Ins. Co. v. Sharp,* 264 Ind. 599, 349 N.E.2d 173 (1976), and that parties to litigation are required to pay their own attorney's fees. *Gavin v. Miller,* 222 Ind. 459, 54 N.E.2d 277 (1944). Because these two principles are built upon solid foundation in Indiana law, this court declines to abrogate them without more guidance from Indiana's courts.

Plaintiffs next contend that they are entitled to attorney's fees in this case pursuant to Ind.Code § 34–52–1–1(b)(3), which provides that "In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party ... (3) litigated the action in bad faith." Plaintiffs find support for this assertion in Magistrate Judge Cosbey's recent order in *Phaedra Partners, Ltd v. Traveler's Property Casualty Corp.,* 99–CV–29 (N.D.Ind. April 26, 1999) (slip opinion).

In *Phaedra,* Magistrate Judge Cosbey denied a motion by the insurer to strike the plaintiff's prayer for attorney's fees from the complaint based upon the exception contained in Ind.Code § 34–52–1–1(b)(3) and the Indiana Supreme Court's holding in *Mitchell v. Mitchell,* 695 N.E.2d 920, 922 (Ind.1998): "In light of this recent guidance from the Indiana Supreme Court, this Court is reluctant to find the prelitigation conduct alleged in this case—in essence, the Defendant's bad faith failure to comply with its insurance agreement

with the Plaintiff—will not, if proven, also meet the legal standard for 'litigating in bad faith' as set out in § 34–52–1–1(b)(3)." *Id.* at 4–5. This court is in agreement with Judge Cosbey's reasoning in *Phaedra* and shall reiterate that reasoning as it relates to the parties' arguments.

In *Phaedra*, Judge Cosbey explored the meaning of the phrase "litigated the action in bad faith" in § 34–52–1–1(b)(3) by looking to the Indiana Supreme Court's interpretation of that phrase in *Mitchell.* *Mitchell* construed the phrase as follows:

'litigated the action in bad faith' by its terms requires scrutiny of the motive or purpose of the non-prevailing party. More precisely, 'bad faith is not simply bad judgment or negligence. Rather, it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity. It is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will.'

*Mitchell*, 695 N.E.2d at 924–25. This standard for liability for attorney's fees is essentially identical to the bad faith standard the Indiana Supreme Court established in *Erie* for bad faith actions against insurers. Therefore, according to the plaintiffs in *Phaedra*, a jury determination that the Defendant acted in "bad faith" in denying their claim demonstrates that the Defendant also "litigated in bad faith," opening the door for an award of attorney's fees pursuant to § 34–52–1–1(b)(3).

██ United Fire takes the same position taken by the defendant in *Phaedra*, that is, that the word "litigated" in § 34–52–1–1(b)(3) should be read literally, and therefore should only apply to bad faith conduct of a losing party during the litigation process. United Fire further contends that plaintiffs have not alleged that its conduct during the litigation is in bad faith but only that it denied coverage in bad faith. Thus, under United Fire's theory any bad faith finding by a jury applies only to the conduct which formed the underlying basis for this lawsuit (i.e., the Defendant's denial of insurance coverage),

and therefore cannot also serve to support liability for attorney's fees under § 34–52–1–1(b)(3).

United Fire's argument, that the phrase "litigated in bad faith" does not encompass pre-litigation conduct, has some surface appeal. The Indiana Supreme Court, however, appears to have signaled a more expansive point of view. *Mitchell*, 695 N.E.2d at 925. The dispute in *Mitchell* arose from an agreement between a daughter and her stepmother upon the death of the daughter's father (the stepmother was the father's second wife). The agreement specified that the stepmother was to act in a "prompt and reasonable manner" to search for and produce several items of sentimental value to the daughter. The stepmother did not comply with the terms of the agreement, and the daughter sued for specific performance. The trial court found, *inter alia*, that the stepmother had willfully and intentionally failed to comply with the agreement, and that her failure to comply with the agreement was "willful, intentional, and in bad faith," and awarded attorney's fees accordingly.

In applying these findings to § 34–52–1–1(b)(3), the Indiana Supreme Court stated: The findings in this case amply illustrate that [the stepmother] acted with "furtive design or ill will" both before and after the suit was filed. *Indeed, [the stepmother] does not dispute the trial court's finding that her "failure to comply with the Agreement was ... in bad faith." The trial court's finding meets the statutory legal standard that [the stepmother] "litigated in bad faith."* *Mitchell*, 695 N.E.2d at 925 (emphasis added). As Judge Cosbey acknowledged in *Phaedra*, "it is entirely likely that Justice Boehm was *not* thinking of plaintiff's verdicts in bad faith insurance cases when he penned *Mitchell*." *Phaedra*, at 4. Nevertheless, this passage indicates that the stepmother/defendant's "failure to comply with the Agreement"—i.e., the *conduct that formed the basis for the lawsuit*—also met the statutory legal standard for litigating in bad faith under § 34–52–1–

1(b)(3). As a result, Judge Cosbey concluded and, now this court holds, that in the context of a bad faith insurance dispute, an insurer's denial of coverage in bad faith may lead to a conclusion that the insurer litigated the action in bad faith, as that term is contemplated under § 34–52–1–1(b)(3). *See Phaedra,* at 4.

There is, however, one caveat to the above holding. While § 34–52–1–1(b)(3) provides a vehicle by which an award of attorney's fees may be assessed, the decision of whether to award them, and the amount, lie within the discretion of the trial court, post-trial. *Mitchell,* 695 N.E.2d at 924 (citing *Kahn v. Cundiff,* 533 N.E.2d 164, 167 (Ind.Ct.App.1989), *adopted on trans.,* 543 N.E.2d 627, 629 (Ind.1989) (per curiam)). Indeed, *Mitchell* solicits the trial court's scrutiny of the motive and purpose driving a party's litigation conduct in the course of exercising its discretion under § 34–52–1–1(b)(3). Thus, not every finding of bad faith conduct will necessarily subject an insurer to liability for its insured's attorney's fees.

Because the court finds that plaintiffs may, under certain circumstances, recover attorney's fees under § 34–52–1–1(b)(3), United Fire's Motion for Partial Summary Judgment as to attorney's fees is DENIED.

### CONCLUSION

Based on the foregoing, the Patels' Motion for Reconsideration is DENIED; the Patels' Motion to Certify Questions of State Law is DENIED; United Fire's Motion for Partial Summary Judgment relating to emotional damages is DENIED; United Fire's Motion for Partial Summary Judgment relating to attorney fees is DENIED. The court shall take under advisement United Fire's Motion for Partial Summary Judgment relating to lost profits and United Fire's Motion Strike the Affidavit of Mahendra Patel.